**PINE v. UNITED STATES.**

No. 10336.

Circuit Court of Appeals, Fifth Circuit.

April 26, 1943.

Rehearing Denied May 27, 1943.

Vincent C. Giblin and James M. Carson, both of Miami, Fla., for appellant.

Herbert S. Phillips, U. S. Atty., of Tampa, Fla., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Charged with having conspired with named and unnamed persons to violate the Mann Act,[1] that is to say, with having conspired to transport women and girls in interstate commerce to work in the LaPaloma Club in Miami under depraved and debauched surroundings and conditions which would induce and lead them to a course and life of sexual immorality, appellant was found guilty as charged and sentenced to be fined and imprisoned. Conceding that the indictment charges an offense under Athanasaw v. United States, 227 U.S. 326, 33 S. Ct. 285, 57 L.Ed. 528, Ann.Cas.1913E, 911, and not seriously contesting that the La-Paloma Club was operated under surroundings and conditions, and that women were unlawfully transported for work in it, as charged, appellant here insists: that there is no evidence whatever that he was a party to, or even so much as knew of the existence of, the conspiracy charged; that his motion for a directed verdict should have been granted; and that for the failure to grant it, the judgment must be reversed. In addition, he urges upon us that there was prejudicial error in the conduct of the trial (1) in that the court did not prevent, and not preventing failed to protect defendant from the consequences of, misconduct of the government's attorneys, and (2) in that the court refused to give in charge to the jury defendant's requested charges Nos. 6, 10, 24 and 29.

Because, if we are to reverse for errors committed in the conduct of the trial, we should do so without comment on the sufficiency of the evidence to support the conviction, we will first consider those assigned errors. Of these, those based on misconduct of government's counsel are not supported by exceptions taken at the time of their occurrence or requests to charge with reference to them, nor were they assigned by the defendant as errors "on which he will rely in the prosecution of his appeal". They are brought to our attention for the first time in appellant's brief, by what he calls a new assignment, that he did not have a fair trial because of the flagrant misconduct of the prosecution.

 We are prepared to hold that there might be instances of such flagrant misconduct on the part of the government as that, though not excepted to at the time of their occurrence, and not claimed as error except in the brief, we would reverse for them. This, however, is certainly not such a case. A most careful reading of the record as a whole in the light of the claims of misconduct set out in Appendix B of appellant's brief leaves us in no doubt that the conduct of the prosecution did not constitute reversible error. Defendant was himself a lawyer of the widest experience in the conduct of criminal cases. For many

---

[1] 18 U.S.C.A. § 398.

years as state prosecutor, he had prosecuted in criminal cases in that county, and for as many more he had defended in them. Adroit, vigorous, forceful, naturally resentful of the prosecution and of the charges made and testified to against him, he personally participated in the trial, counseling and conferring in its course, and actively cross-examining many of the witnesses, particularly those who most straightly and vilely accused him. In addition, as a witness in his own behalf, he testified at length. In view of the nature of the vigorous personal defense he made and of the clash of personalities which was thus made inevitable, it is plain that there was ample ground for anticipating, as well as basis for excusing, some by-play. As was to be expected, therefore, there were plenty of exchanges between Pine and Paisley, but it was give and take throughout, and at no time, in our opinion, did either Pine or Paisley transcend permissible limits. Instead, therefore, of the record showing gross and prejudicial misconduct and unfairness on the part of the prosecution, it is, we think, under the circumstances remarkably free from anything of the kind.

When we turn to the refused requests to charge, we must keep in mind that they are not to be considered abstractly or in vacuo as though the court had given no charge at all. They must be considered in their relation to the trial as a whole and especially in the light of the very full and fair general charge given, to which no exception was taken. In short, the refusal as to any of them may be regarded as reversible error if, but only if, (1) it is in itself a correct charge, (2) it is not substantially covered in the main charge, and (3) it is on such a vital point in the case that the failure to give it deprived defendant of a defense or seriously impaired its effective presentation. So considering them, it is quite clear that the refusal to give defendant's requested charge No. 6, charging generally that accomplice testimony should be received with extreme caution, did not constitute reversible error for (1) it was couched in such general terms as to be misleading, and (2) the judge charged fully on the weighing of evidence, and it was a matter within his discretion whether a charge as to accomplice testimony should be given.[2] Neither was it reversible error to refuse to give charge No. 10.[3] Its effect was to charge as though the offense was the substantive one of actually transporting particular women and girls rather than the offense of conspiring to transport, and it was, therefore, confusing and incorrect. The indictment charged Pine not with transporting particular women and girls but with having entered into a conspiracy to transport, and it was not necessary to convict him that he should know or intend that any particular woman or girl was to be transported. It was sufficient if he was in a general conspiracy or agreement that such transportation would be accomplished, even though there was in fact no transportation. Besides, the refusal of the charge did not deprive Pine of his defense or seriously impair its presentation, for the district judge, in his full charge on conspiracy, correctly charged the offense and specifically required of the jury before they could convict that they find beyond a reasonable doubt, that is, that they have a full, firm and abiding conviction, that the defendant had entered into the agreement and understanding the indictment charged. Over and over he reiterated that knowledge of and participation in the unlawful agreement was of the essence of the offense. At one place he charged, "Mere knowledge alone does not make one a member of a conspiracy, either knowledge of the existence of the conspiracy or knowledge of the commission of overt acts or even participation in an overt act, but there must be membership in the unlawful combination by aid, assistance or tacit understanding." Again he charged, "It is necessary for the government to prove that there was an un-

---

[2] Holmgren v. United States, 217 U.S. 509, 30 S.Ct. 588, 54 L.Ed. 861, 19 Ann. Cas. 778; Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas.1917B, 1168; Richardson v. United States, 181 F. 1; United States v. Becker, 2 Cir., 62 F.2d 1007; United States v. Block, 2 Cir., 88 F.2d 618; Diggs v. United States, 9 Cir., 220 F. 545; Hanks v. United States, 4 Cir., 97 F.2d 309. Cf. Cheatham v.

State, 67 Miss. 335, 7 So. 204, 19 Am.St. Rep. 310.

[3] "If you find from the evidence that the defendant, Fred Pine, had no knowledge of the transportation of the said women or girls, or some of them, or any intent that they or any of them were being, or would be so transported for the purpose alleged, it will be your duty to find for the defendant and your verdict should be 'not guilty'."

lawful conspiracy formed as charged in the indictment, and that Pine was a member of said conspiracy". And further, and greatly important to the defendant, he charged the jury, "You should acquit the defendant if you do not find him guilty of the charge made in the indictment, even if you may find from the evidence that he has been shown to be guilty of wrong doing or of other offenses not charged in the indictment in this case".

Charge No. 24, viewed abstractly, is, we think, a correct charge, but its refusal was not reversible error, for the court in the main charge did give a charge on circumstantial evidence correctly embodying the essentials of such charge. The refusal to give charge No. 29 to the effect that in considering whether Pine was guilty of the offense charged, the jury should, in determining the question of whether the circumstances, surroundings and influences at the club would induce women or girls to give themselves up to a condition of debauchery, consider as material the maturity or immaturity and the experience or inexperience of such women or girls, was not error, because it was a wholly incorrect statement of the law. The nature and character of the place, its surroundings, influences and activities, their opportunities for and their inducements to a life of sexual immorality are the determining questions, and not the virtue or lack of virtue, chastity or lack of chastity of particular women who might be brought there. The statute Pine is charged with conspiring to violate is not an anti-seduction statute, it aims at prohibiting and preventing immoral practices. It is only incidentally concerned with the character for chastity or unchastity of those transported for the purpose of engaging in them.

Finding the conduct of the trial free of reversible errors, we turn to a consideration of appellant's main contention that the evidence was insufficient to support his conviction. Pine's defense on the trial was a positive and emphatic denial that he had conspired with anybody to transport any girls from any state into Florida to work there. His position here is that, convicted in and because of a surcharged atmosphere of insinuation, innuendo and suspicion generated in the trial out of the very nature of the charge, and the testimony and character of the witnesses against him, he was unlawfully convicted because there was no evidence direct or circumstantial showing or tending to show that he was guilty of the conspiracy charged, i. e., that knowing that women were being or were to be transported in interstate commerce to work at the club, he was in agreement with those who would and did arrange it. Pointing to the disgusting character of the testimony dealing with acts of sexual perversion charged to Pine, and its tendency, if believed, to inflame the minds of the jurors, Pine's counsel argues that he has been convicted not of a conspiracy to transport women in interstate commerce but of having been a party to revoltingly lewd and lascivious practices. Arguing with force and conviction that, reprehensible as his conduct may have been in falsely providing the front for the LaPaloma Club and in associating himself with persons of the low order of those who operated and worked at the place, there is not a syllable of evidence which convicts him of the crime charged, and he may not under this indictment be found guilty of any other, Pine's counsel insists that he has been. Because of their earnestness and sincerity and their completely correct insistence that if the evidence does not convict Pine of the offense charged, the conviction may not stand no matter how base or unworthy in other respects he, or his conduct, may be, or have been, we have, in spite of the unnecessarily vile and obscene details into which the evidence was permitted in portions of it to descend, subjected the record as a whole to the most searching and painstaking examination. At a loss to understand why, without exception by defendant, or remonstrance from the court, the evidence was, in defiance of all common decency, permitted so to descend, we are yet in no doubt that defendant may not complain of it. For, whether upon the theory that the sordid and filthy tale would so reflect upon the witnesses who told it and would seem so incredible as in the end to react to Pine's benefit, or for some other reason, defendant made no move to exclude it, none to restrict it as or after it came in. But for another reason defendant has taken no harm from this, of which he can complain, for while the details into which the court allowed the witnesses to descend have and had no proper place in this record, the facts told in more general and less bawdy terms that these practices were not only being engaged in by the girls in, or in connection with, the club, with Pine's knowledge, but that he, not only an officer of the club but the front for it, was him-

self engaging in them, were completely relevant upon the nature and character of the place to which the girls were being brought, upon whether he was cognizant of that nature and the practices going on, and upon whether he was a party to an understanding by which girls were being and were to be brought into the club, not only from Florida but from other states. The fact that girls were transported in interstate commerce for work at the club in violation of the Mann Act is established without dispute. The fact that advertisements were inserted by the management, and employees of the club were sent to other states, to recruit new victims for the club is undisputed. While Pine denied, and no one testified, that he actually knew of all these things, there is testimony that every employee and person working in and about the club knew that girls were being, and would be, brought in from outside the state, that Pine knew that some of them had come from Chattanooga, Tennessee, and there is no evidence that at any time, except when, as the testimony expresses it, "The heat was on the club", and he advised them to be careful while that was going on, he ever protested against, or ordered the cessation of any of the practices there. It is established in part by Pine's admissions and in part by indisputable testimony: that he knew both the character and reputation of Youst, the active operator of the place, for running disorderly and immoral places, and that it was such that he could not obtain a license; that Pine had organized a corporation and obtained a license for Youst upon misrepresentations to the authorities that Youst had no interest in the property; that Pine was to be an active and responsible officer in it, Secretary-Treasurer, and a director, and that he did own some stock in the company and did take some active part in its management. In addition, there is considerable testimony that Pine held himself out as the real, the dominant owner, the person fully in charge of the place. No moneys could be paid out except when Pine signed the checks. He did testify, and his testimony was corroborated by others, that he usually signed checks in blank to be later filled in and countersigned by Youst and did not know the particular uses to which particular checks would be put. But the evidence as a whole fully supports the jury's verdict: that the circumstances of Pine's connection with Youst and the way the place was organized

and being run, makes it clear that Pine had a dominant position there; and that he knew both generally and particularly what was going on at the club; that in short he was engaged in the conspiracy, some of the fruits of which were being daily manifested in the conduct of the place. If, therefore, the associations that he had taken up, if the position he had put himself in, if his falsity and deception in connection with the procuring of the license for, and in pretending to own, when he did not own, the place, prejudices him before the jury, this was the kind of prejudice to which his own conduct has justly laid him liable, and of which he may not here complain. A man may not touch pitch and remain undefiled, he may not lie down with dogs and get up without taint, he may not, without taking upon himself the full peril of it, assume, as he did here, to be the owner and in control of the place before trouble falls upon it, and deny this assumption when it has fallen. If, therefore, these wholly undesirable associations, practices and attitudes have subjected him to prejudice, it is a kind of prejudice the legitimate results of which might well be that a jury finding him false in respect to his professions and claims in regard to the ownership and operation of the place, might well have found him false in regard to his claim that he knew nothing of, and was not a party to, the activities by which the place was supplied with women and girls. Appellant's counsel, in support of the position that the evidence has not made out a case against him, reminds us that the crime with which Pine was charged was a conspiracy to commit, and not the commission of, a substantive offense. They argue that Pine might have been convicted of a substantive offense without showing knowledge, whereas, it would not be possible to convict him of the crime of complicity without such showing.

To convict here of a conspiracy to violate, or violation of, the statute in question, a showing of an intent to violate it is essential. But we think it clear that the offense with which he is charged was more easily made out than would have been a charge of the commission of the substantive offense. If it had been the latter, it would have been necessary to show not merely that Pine knew that some girl or girls might be unlawfully imported in interstate commerce but that he was complicit in bringing in the particular victim,

whereas, in an indictment for conspiracy, it was not necessary to prove that he had knowledge of the purpose to bring or the actual bringing in of a particular girl. It was sufficient to show that he knew of, and was a party to, a general plan or conspiracy to transport girls or women unlawfully in interstate commerce. If he was so complicit, and we think it plain that the evidence is sufficient to support the verdict of the jury that he was, it is not at all necessary that he should have known of the purpose to transport or the actual transportation of any particular girl or woman. No reversible error has been shown. The judgment is affirmed.