Sammy VanWOUNDENBERG,
Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–84–95.

Court of Criminal Appeals of Oklahoma.

June 3, 1986.

Rehearing Denied July 17, 1986.

Elaine Meek, Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Sammy VanWoundenberg, was convicted in the District Court of Mus-

kogee County, Case No. CRF–83–64, of First Degree Murder, for which he received a sentence of death. From this judgment and sentence he appeals.

The evidence shows that Mark Allen Berry was strangled to death around 4:30 a.m. on February 6, 1983 in the Muskogee City-Federal Jail. Berry, Dennis Brown and Terrance James had been arrested for a federal charge of theft of government property, and were incarcerated together. Brown and James believed that Berry was responsible for their arrest, and so on February 5, 1983, they were discussing beating up Berry when the appellant joined the discussion. Brown testified that the appellant urged them to strangle Berry and hang him to make the death appear to be a suicide. He then provided a wire from a broom and demonstrated how to use it to strangle Berry. Early the next morning the appellant entered the cell of Brown and James and asked if they were ready; he then stuck a piece of paper over the lens of the surveillance camera. Brown then got Berry to play cards with him, and when they were playing, James walked up behind Berry, wrapped the wire around his neck and strangled him while Brown held the victim's feet, and placed his hand over Berry's mouth.

Another inmate testified that he heard the appellant warn James and Brown that someone was coming. So James pulled Berry into that inmate's cell and continued the strangulation. After Berry appeared to be dead, James, Brown and the appellant hung Berry's body in a shower stall.

■ As his first assignment of error, the appellant alleges that insufficient evidence was presented at the preliminary hearing to show probable cause that he committed first degree murder. A preliminary hearing does not require evidence sufficient to warrant a conviction. The evidence need show only that an offense has been committed and there is reason to believe the accused committed the offense. *Edwards v. State*, 655 P.2d 1048 (Okl.Cr. 1982). The preliminary hearing transcript reveals that the magistrate properly found sufficient evidence to bind the appellant over for trial on a charge of first degree murder. *Sexson v. State*, 620 P.2d 1326 (Okl.Cr.1980). Therefore, appellant's first assignment of error is without merit.

■ As his next assignment of error, the appellant argues that the trial court erred in refusing to grant his motion for severance. Granting or denying such a motion is discretionary with the trial court and its ruling will not be disturbed on appeal unless the appellant makes a clear showing of abuse of discretion resulting in prejudice. *Cooper v. State*, 584 P.2d 234 (Okl.Cr. 1978). The appellant cites *Murray v. State*, 528 P.2d 739 (Okl.Cr.1974) and contends that his defense was antagonistic to that of his codefendant because the appellant claimed James committed the offense, and James claimed he was under the influence of drugs and could not remember if the appellant was involved. James also testified that the appellant helped hang the victim's body on the shower stall. There was some evidence that Berry might not have been dead at this time. In *Murray* the respective defenses of the codefendants were mutually antagonistic. Defenses are antagonistic where each defendant is attempting to exculpate himself and inculpate his codefendant. *Master v. State*, 702 P.2d 375 (Okl.Cr.1985). Here the record clearly shows that James admitted killing Berry, and denied knowing if the appellant participated. As the appellant cannot show antagonistic defenses, this assignment of error is meritless.

■ The appellant contends as his third assignment of error that he was denied a trial by a fair and impartial cross-section of the community due to the exclusion of potential jurors solely because they were opposed to capital punishment. Relying on *Grigsby v. Mabry*, 569 F.Supp. 1273 (E.D. Ark.1983), *mod.* 758 F.2d 226 (8th Cir. 1985), he asserts that such juries are guilt-prone, exclude identifiable groups including women and blacks who traditionally have been opposed to the death penalty, and that questioning panel members at the beginning of the trial unduly focuses the minds

of the jurors on the sentencing phase before any evidence as to guilt has been introduced. The Supreme Court of the United States recently addressed this identical issue in *Lockhart v. McCree*, — U.S. ——, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986) which rejects this argument, reversing the case on which the appellant relies.

In our view, it is simply not possible to define jury impartiality, for constitutional purposes, by reference to some hypothetical mix of individual viewpoints. Prospective jurors come from many different backgrounds, and have many different attitudes and predispositions. But the Constitution presupposes that a jury selected from a fair cross-section of the community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case. *Lockhart*, — U.S. at ——, 106 S.Ct. at 1770, 90 L.Ed. 137. We therefore find the appellant's assignment of error to be meritless.

■ As a fourth assignment of error, the appellant complains that the trial court improperly excused a prospective juror in violation of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). The record reveals the following questions and responses:

THE COURT: Mr. McGraw, you and the other jurors in the back have been very patient. Have you heard anything so far that you think might cause you a problem with this case?

JUROR MCGRAW: I think I have, sir.

THE COURT: Does it have to do with my question about the death penalty in a case where the law and the evidence so provided?

JUROR MCGRAW: Yes, sir.

THE COURT: Do you feel like if you were on a case as a juror and you found beyond a reasonable doubt that the defendant on trial in that case was guilty of Murder in the First Degree, are your reservations about the death penalty such that you just simply couldn't sit down and agree to do or even seriously consider a death penalty?

JUROR MCGRAW: I don't think I could. (Tr. 354).

Mr. McGraw was then excused over the objection of defense counsel. The rule is clear that a prospective juror who is irrevocably committed, prior to trial, to vote against the death penalty may be properly excused. *Dutton v. State*, 674 P.2d 1134 (Okl.Cr.1984). In that case a prospective juror gave exactly the same answer when asked if she could ever vote to impose the death penalty. We find that because Mr. McGraw indicated by his answers that he was irrevocably committed to vote against the death penalty, he was properly excused.

■ The appellant next complains that the trial court erred in refusing to allow defense counsel to rehabilitate prospective jurors who were excused for cause when they indicated that they were unwilling to consider the death penalty. We addressed this same issue in *Banks v. State*, 701 P.2d 418 (Okl.Cr.1985). That the manner and extent of voir dire rests largely in the discretion of the court, is well settled. Unless the questions counsel wishes to ask are dictated into the record, and a ruling is obtained from the trial court, we are unable to determine if that court abused its discretion in refusing to permit the questions to be asked. *Banks* at 423. In the six instances in the case before us, cited by the appellant, defense counsel requested that he be allowed to voir dire the prospective juror in only one instance. (Tr. 113). That prospective juror clearly indicated that he could not consider the death penalty, and when defense counsel continued the questioning, the trial court properly stopped him. In the other five instances, defense counsel asked that the court note his exception to the excusal of each of those prospective jurors. Defense counsel neither asked that he be allowed voir dire, nor did he dictate any questions into the record. This assignment of error is meritless.

[redacted] As his next assignment of error, the appellant alleges that insufficient evidence was presented to convict him of first degree murder.

> In *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the United States Supreme Court held that due process requires a reviewing court to determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt."

*Spuehler v. State,* 709 P.2d 202, 203–204 (Okl.Cr.1985). Title 21 O.S.1981, § 172 provides:

> All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals.

"Aiding and abetting" involves acts, words or gestures encouraging the commission of the offense, either before or at the time of the offense. *Rounds v. State,* 679 P.2d 283 (Okl.Cr.1984). The evidence reveals that the appellant encouraged his codefendant and Brown to strangle the victim, and showed them how to do it, provided the wire, and suggested the victim be hanged to make his death appear to be a suicide. He covered the lens of a surveillance camera so that the murder would not be observed. His voice was recognized by an inmate warning James and Brown during the strangulation of the victim that someone was coming. When the victim's body was being hanged, the appellant aided. Clearly, enough evidence was presented from which the jury could reasonably conclude that the appellant was guilty of first degree murder.

[redacted] The appellant next asserts that the testimony of Dennis Brown was insufficiently corroborated. Title 22 O.S.1981, § 742 requires that the testimony of an accomplice be corroborated by other evidence tending to connect the defendant with the commission of the offense. Such evidence need not be great, either in quantity or quality, and is sufficient if all facts and circumstances relied upon for corroboration, when considered together, are consistent with each other and inconsistent with any other reasonable hypothesis but the connection of the defendant to the crime. *Jemison v. State,* 633 P.2d 753 (Okl.Cr.1981). Other witnesses testified that the appellant attempted to warn Brown and James that someone was coming during the commission of the murder. Dressed only in his underwear with socks covering his hands, the appellant aided in hanging the body and even wiped blood from the mouth of the victim. We find that this evidence sufficiently corroborates Dennis Brown's testimony, and therefore this assignment of error is without merit.

[redacted] The appellant claims in his eighth assignment of error that he was given inadequate notice of Dennis Brown's testimony to prepare for trial. Two weeks before trial, the State gave notice of its intent to endorse Brown as a witness, and gave the appellant a copy of Brown's statement. Over the objection of the appellant, the trial court refused to remand the case for further preliminary hearing. Brown had been a codefendant through the preliminary hearing. Under these facts, the issue to be decided is whether further preliminary hearing is required when a codefendant decides after preliminary hearing to become a witness for the State. The appellant cites *Beaird v. Ramey,* 456 P.2d 587 (Okl.Cr.1969) and *Martinez v. State,* 496 P.2d 416 (Okl.Cr.1972) which hold that at a preliminary examination the defendant is entitled to call and examine all material witnesses. There is no question that one who participates in the commission of a crime is a material witness. That he cannot be compelled to incriminate himself is equally clear. U.S. Const. Amend. V. Additionally, we recognize that limitations exist to the rule stated in *Beaird* and *Martinez.* For example, we have held that when an information is amended, unless it substantially alters the charge, or necessitates the introduction of new issues, a sub-

sequent preliminary examination is not required. *Grizzle v. State,* 559 P.2d 474 (Okl.Cr.1977). The appellant complains that he was unable to prepare to rebut Brown's testimony in the first and second stages of trial, but aside from this bald assertion, he does not show how he was prejudiced as he was given a thirty-four page transcript of Brown's statement to the district attorney, and does not cite any instances where Brown's testimony at trial surprised him. Having shown no prejudice, we find that the refusal of the trial court to remand for further preliminary hearing was not error.

 As a subproposition to this assignment of error, appellant further claims that his defense counsel was unable to question Brown concerning evidence of aggravating circumstances until cross-examination during the second stage of trial, and therefore counsel was unable to properly prepare for the second stage of trial. The appellant acknowledges we have held that a preliminary hearing on a bill of particulars is not required. *See Jones v. State,* 660 P.2d 634 (Okl.Cr.1983). After an examination of the bill of particulars in this case, we find that appellant's actual notice was sufficient to allow him to prepare his defense.

In a ninth assignment of error, the appellant argues that the trial court erred in allowing excessive security measures to be conducted in the courtroom in view of the jury. He complains that five uniformed officers were present in the courtroom during the trial. The record reveals that at the beginning of the fourth day of trial, counsel moved for a mistrial because of the presence of the officers and that three were sitting behind the defendants. Although appellant states that the officers were present for security reasons, the record does not reflect this. The trial transcript is not clear why the officers were present. The statements of the judge and prosecutor imply that due to a miscommunication, police officers were present on the wrong day to relieve deputy sheriffs who had been subpoenaed by the defendants, and that the deputies were present, among

other reasons, to escort incarcerated witnesses to and from the jail. The trial court stated that the police chief should be advised that the police officers would not be needed.

 The record is unclear concerning the reason for the presence of the five officers, or which ones were deputy sheriffs, and which ones were police officers. Nor is it clear who, if anyone, left after the court's instruction. Presenting enough of a record to allow review by this Court is the responsibility of the appellant. *Vaughan v. State,* 657 P.2d 657 (Okl.Cr. 1983). Since the presence of peace officers in a courtroom during a criminal trial is within the sound discretion of the trial court, *Hart v. State,* 535 P.2d 302 (Okl.Cr. 1975), and there is nothing in the record to show that the trial court abused that discretion, we find this assignment of error to be without merit.

 As his tenth assignment of error, the appellant alleges improper comments of the prosecutor. These comments were not preserved for review because counsel failed to object or when he made an objection, he failed to request an admonition to the jury. *Banks v. State,* 701 P.2d 418 (Okl.Cr.1985). After reviewing the comments, we cannot find that they determined the verdict or affected the sentence.

 The appellant next assigns as error the trial court's failure to give certain instructions. Two of those instructions concern the testimony of Dennis Brown. He argues first, that the trial court should have instructed that Brown was an accomplice, and second, that the jury should have been given a cautionary instruction on the weight to be given Brown's testimony. Defense counsel for the appellant objected to the wording of one instruction, and requested another instruction, neither of which concern the two instructions which appellant now claims should have been given. After his objection was sustained, and the wording changed, and the request for an additional instruction was refused, defense counsel stated that those were the

only objections and requests that he had. Accordingly, he has waived his right to allege error in them on appeal. *Butler v. State,* 645 P.2d 1030 (Okl.Cr.1982). *See also Foster v. State,* 714 P.2d 1031 (Okl.Cr. 1986).

The appellant also argues that the court erred in refusing his requested instruction that the appellant was an accessory after the fact. The trial court correctly ruled that being an accessory to a felony is a separate substantive offense, and is not a lesser offense included within the felony. *Williams v. State,* 620 P.2d 421 (Okl.Cr. 1980). The trial court would have erred in giving such an instruction.

We find this assignment of error to be without merit.

The appellant contends as his twelfth assignment of error that failing to separate his sentencing stage from that of his codefendant was error. However, the appellant cites no authority for this contention. A defendant must cite relevant and specific authority to support his assertions on appeal. *Kennedy v. State,* 640 P.2d 971 (Okl.Cr.1982). He attempts to show prejudice by arguing that Brown's testimony was uncorroborated, an issue we have addressed, and by arguing that because the evidence was insufficient to show that his participation in the offense was especially heinous, atrocious, or cruel, introducing evidence of this aggravating circumstance against him was improper. The evidence supports a finding by the jury that the appellant persuaded his codefendants to kill the victim, showed them how to do it, gave them the wire to be used, and served as a lookout while his codefendants choked the victim to death over a period of several minutes. Such evidence would certainly support a finding that his actions were "extremely wicked or shockingly evil," "pitiless or designed to inflict a high degree of pain, utter indifference to, or enjoyment of the sufferings of others," as we have defined "heinous." *Cartwright v. State,* 695 P.2d 548 (Okl.Cr.1985), cert. denied —— U.S. ——, 105 S.Ct. 3538, 87 L.Ed.2d 661 (1985).

Therefore, this assignment of error is meritless.

The appellant next alleges that error was committed when the trial court allowed the introduction of pointed and sharpened air conditioner vent blades which he made, as evidence of the aggravating circumstance that the appellant was a continuing threat to society. Relevant evidence is defined in 12 O.S.1981, § 2401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We agree with the argument of the State that "... the homemade weapons were clearly relevant to show the defendant's propensity for violence and future dangerousness." *See Dutton v. State,* 674 P.2d 1134 (Okl.Cr. 1984). This assignment of error is meritless.

The appellant next argues that the State failed to prove that the appellant intended that Mark Berry be killed, or that he knew that his codefendants planned to commit the murder. He argues that the imposition of the death penalty would be in violation of the holding of *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) which found the death penalty improper for a codefendant who was a mere getaway-car driver, did not participate in the murder, and did not intend that a life be taken. *Enmund,* 458 U.S. at 801, 102 S.Ct. at 3378. As we have previously discussed, the appellant's part in this murder was much greater. He was found guilty of first degree murder. Two of the elements of that crime are (1) that the death was caused by the defendant, and (2) that the death was caused with malice aforethought. The evidence supports the conclusion that the murder was planned and encouraged by the appellant, and that he intended it to occur. Therefore, although he did not do the strangling, he knowingly participated. *See Hatch v. State,* 662 P.2d 1377 (Okl.Cr.1983), *after remand,* 701 P.2d 1039 (Okl.Cr.1985). His

participation in the offense made him a principal. *See* 21 O.S.1981, § 172.

■ Since the appellant did not in fact kill the victim, we are required to find whether he attempted to kill, intended that a killing take place, or intended that lethal force be used. *See Cabana v. Bullock,* —— U.S. ——, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986). We find that the facts support the conclusion that the appellant intended that a killing take place.

The appellant next contends that the aggravating circumstance that the murder was especially heinous, atrocious, or cruel is being applied in an arbitrary fashion. We addressed this same argument in *Liles v. State,* 702 P.2d 1025 (Okl.Cr.1985). Furthermore, the death penalty convictions affirmed by this Court in which the aggravating circumstance of heinous, atrocious or cruel as found to be present have consistently passed constitutional challenge. *Cartwright,* supra, *Nuckols v. State,* 690 P.2d 463 (Okl.Cr.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985). *Robison v. State,* 677 P.2d 1080 (Okl.Cr.1984), *cert. denied,* —— U.S. ——, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984); *Davis v. State,* 665 P.2d 1186 (Okl.Cr.1983), *cert. denied,* 464 U.S. 865, 104 S.Ct. 203, 78 L.Ed.2d 177 (1983); *Jones v. State,* 648 P.2d 1251 (Okl.Cr.1982), *cert. denied,* 459 U.S. 1155, 103 S.Ct. 799, 74 L.Ed.2d 1002 (1982). As we have stated earlier in the opinion, the evidence in this case certainly supports this aggravating circumstance.

■ As his sixteenth assignment of error, the appellant maintains that the Constitution requires that the trial court give the jury particularized guidelines for considering mitigating circumstances. Title 21 O.S.1981, § 701.10 provides that a defendant can introduce evidence concerning any mitigating circumstances. In construing this statute, we have held that, "A defendant may offer 'any relevant evidence, within the limitations of the rules of evidence, bearing on his character, prior record or the circumstances of the offense.'" *Liles,* at 1031 (citation omitted). The record reveals that the trial court instructed the jury regarding the balancing of aggravating and mitigating circumstances and included in his instructions specific evidence presented by the appellant to be considered in mitigation. We find that such instruction is in full compliance with constitutional requirements as any further instruction would impermissibly limit the jury in its consideration of what factors should be weighed against the aggravating circumstances provided by statute. *See Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and *Brogie v. State,* 695 P.2d 538 (Okl.Cr.1985).

■ The appellant asserts as his seventeenth assignment of error that the State failed to provide sufficient notice of the aggravating circumstances to be proved at trial. Title 21 O.S.1981, § 701.11 provides that "Only such evidence in aggravation as the State has made known to the defendant prior to trial shall be admissible." An examination of the bill of particulars reveals much more detail and specificity than the notice afforded in the bill of particulars in *Banks v. State,* 701 P.2d 418 (Okl.Cr.1985). We find that the bill of particulars in this case is sufficient.

■ The appellant claims next that the aggravating circumstance of continuing threat is being evaluated in an arbitrary manner, and the trial court should have specifically defined the elements of this aggravating circumstance. We have held that this aggravating circumstance is specific and readily understandable. *Chaney v. State,* 612 P.2d 269 (Okl.Cr.1980), *cert. denied,* 450 U.S. 1025, 101 S.Ct. 1731, 68 L.Ed.2d 219 (1981), *rev'd. on other grounds, Chaney v. Brown,* 730 F.2d 1334 (10th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 601, 83 L.Ed.2d 710 (1984). In *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), the Supreme Court addressed the issue of whether a Texas statute worded almost identically to this State's statute was vague, and whether its application would result in an arbitrary decision. That Court stated that "prediction of future criminal conduct is an essential

element in many of the decisions rendered throughout our criminal justice system," and that because such a determination is difficult does not mean it cannot be made. The court continued, "What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine." *Jurek*, 428 U.S. at 275, 276. In considering this aggravating circumstance, the State may present any relevant evidence, in conformance with the rules of evidence, which would show the "existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society," [21 O.S.1981, § 701.12(7)], including evidence from the crime itself [*Robison v. State*, 677 P.2d 1080 (Okl.Cr.1983), *cert. denied*, 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984)], evidence of other crimes [*Coleman v. State*, 668 P.2d 1126 (Okl.Cr.1983)], admissions by the defendant of unadjudicated offenses, [*Johnson v. State*, 665 P.2d 815 (Okl.Cr.1982), *on rehearing*, 665 P.2d 826 (Okl.Cr.1983)], or any other relevant evidence. We find that the language of this aggravating circumstance is clear enough that it does not need to be further defined, nor is it being evaluated in an arbitrary manner.

As his last assignment of error, the appellant claims ineffective assistance of counsel. He complains that defense counsel failed to request accomplice instructions in both stages.

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant

makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

\* \* \* \* \* \*

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

██ Although the trial court erred in failing to give accomplice instructions concerning the necessity of corroboration, we must observe that the evidence is strong, even apart from the testimony of Dennis Brown, that the appellant was a principal in this offense. The other inmates testified concerning the warning the appellant gave during the strangulation of the victim, and his behavior afterward. Furthermore, the record reveals that the trial court gave an instruction on the believability of the witnesses, requiring the jury to consider the bias, prejudice or interest any witness may have in the outcome of the trial, and all other facts and circumstances affecting the believability of the witness. Federal cases have emphasized three factors in determining whether the failure to give such a cautionary instruction was prejudicial. Where accomplice testimony was corroborated by other evidence, the courts have uniformly held either that a cautionary instruction concerning accomplice testimony was unnecessary or that the omission of such a cautionary instruction was not prejudicial. *E.g., United States, v. Williams*, 463 F.2d 393 (10th Cir.1972). Second, where the strength of the evidence of the defendant's guilt is strong, cases have held that failure to give that cautionary instruction was unnecessary, or not prejudicial. *E.g., United States v. Waldron*, 568 F.2d 185 (10th Cir.1977), *cert. denied*, 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978).

A third factor considered is the effect of the trial judge's having given an instruction concerning credibility of witnesses. *E.g, Pine v. United States,* 135 F.2d 353 (5th Cir.1943), *cert. denied,* 320 U.S. 740, 64 S.Ct. 40, 88 L.Ed. 439 (1943). We therefore find that the error committed did not affect the outcome of the trial, and the appellant was not prejudiced by it. *See Stidham v. State,* 507 P.2d 1312 (Okl.Cr. 1973).

 Finally, we are required to make two determinations relative to the imposition of the death sentence. 21 O.S. Supp.1985, § 701.13(C). Accordingly, having reviewed the record, we find that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor. We further find that the record supports the aggravating circumstances found by the jury, which were (1) that the murder was especially heinous, atrocious and cruel, (2) that the murder was committed while appellant was imprisoned on conviction of a felony (first degree murder and kidnapping), and (3) that there exists a probability that the appellant would commit acts of violence that would constitute a continuing threat to society.

Accordingly, the judgment and sentence is AFFIRMED.

BRETT, J., concurs.

PARKS, P.J., specially concurring.

PARKS, Presiding Judge, specially concurring:

I believe the application of 21 O.S.Supp. 1985, § 701.13(C) to cases pending on appeal at the time the statute was passed renders the enactment an *ex post facto* law. *See Green v. State,* 713 P.2d 1032, 1041 n. 4 (Okl.Cr.1985). *See also Foster v. State,* 714 P.2d 1031 (Okl.Cr.1986) (Parks, P.J. specially concurring). However, I have independently applied 21 O.S.1981, § 701.13(C) to these facts and I am convinced that the sentence imposed herein is proper. Therefore, I concur that the judgment and sentence should be affirmed.