**John Edward LAMBERT, Jr., Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. M–87–78.**

Court of Criminal Appeals of Oklahoma.

Nov. 13, 1987.

As Corrected Dec. 22, 1987.

Michael C. Trewitt, Ponca City, for appellant.

Robert H. Henry, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Randy J. Malone, Legal Intern, Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

John Edward Lambert, Jr., the appellant, was convicted in the District Court of Kay County Case No. CRF–86–50 of the crimes of Driving Under the Influence of Alcohol (Count I) and Driving While License is Revoked (Count II). He was fined $1,000.00 and sentenced to twelve (12) months in jail on Count I; fined $250.00 and sentenced to three (3) months in jail on Count II, the sentences to be served consecutively, and he appeals.

The relevant facts are undisputed. At approximately 3:00 a.m. on February 1, 1986, the appellant was driving on a dirt county road in Kay County, just south of the Oklahoma—Kansas border. He lost control of the vehicle, rolling the car several times. The car was severely damaged, the appellant suffering only minor injuries himself. He walked to a nearby farmhouse, occupied by Mike Barton and his family who knew the appellant, to ask for a ride home.

Barton invited the appellant inside and his wife helped clean the appellant's vari-

ous cuts and abrasions. Although the appellant complained of a sore back, Barton was unable to convince him to seek medical assistance. At appellant's insistence, Barton agreed to drive the appellant home, only a mile away. Barton thought the appellant seemed drunk. It was now 4:00 a.m.

After Barton had taken the appellant home, he noticed that an Oklahoma Highway Patrolman was at the scene of the wreck. Concerned that the driver may have been seriously injured, the patrolman asked Barton if he knew where the driver of the wrecked car had gone. Barton took the patrolman to the appellant's house, telling him that the appellant seemed to have been drinking and that he had been injured.

When the two arrived at the appellant's house, Barton knocked at the front door and called out to the appellant, asking him if he was still there and if he was okay. The appellant responded by saying "yes", at which point Barton and the patrolman entered the house.

Upon entering the house, the patrolman followed Barton into a nearby room where the appellant was sitting at a desk talking on the telephone. Barton identified the appellant for the patrolman and then left the residence. By this time, the appellant had finished his telephone conversation and stood up. The patrolman then asked the appellant if he had been driving the car; if he had been drinking since the accident; and asked for a driver's license. The appellant produced a valid Kansas driver's license, admitted driving and denied having anything to drink since the accident.

The patrolman testified that during this time he detected a strong odor of alcohol; that the appellant's eyes were glossy and bloodshot; and that appellant's speech was slurred. Based on these observations, the patrolman arrested the appellant for Driving Under the Influence. He then took the appellant to the hospital in nearby Blackwell to have a blood sample taken and to have appellant's injuries treated. On the way to the hospital, the patrolman stopped again at the accident scene. Before leaving, at approximately 4:30 a.m., the patrol-

men informed the appellant regarding his rights under the Oklahoma Implied Consent Law, 47 O.S.1986 Supp., § 753, et seq., and also gave him his *Miranda* warnings. The appellant's blood sample was taken at 5:20 a.m., and later determined to have a blood alcohol level of 0.16%.

In the first of several assignments of error, the appellant argues that his warrantless arrest was unconstitutional and that all evidence obtained as a result of that arrest should have been suppressed. Our concern lies not with the arrest, *per se*, but rather with the means by which the arrest was effected.

Warrantless arrests of suspected drunk drivers are authorized by statute and have been sanctioned by our decisions in certain, limited, circumstances. 22 O.S.1981, § 196.5; *see e.g. Smith v. State*, 695 P.2d 1360 (Okl.Cr.1985); *Boutwell v. State*, 659 P.2d 322 (Okl.Cr.1983).

■ The existence of probable cause is the necessary prerequisite to making such a warrantless arrest. A police officer may make a warrantless arrest of a suspected drunk driver:

"[w]hen he has probable cause to believe that the party was driving or in actual physical control of a motor vehicle involved in an accident.... and was under the influence of alcohol...."

22 O.S.1981, § 196.5.

However, in this case, we not only have a warrantless arrest, but we are also faced with a warrantless intrusion into the home prior to the point where probable cause to arrest existed. The law on this point is settled, and we may not deviate from its well defined standards.

A firmly established principle of constitutional law is that warrantless intrusions into the dwelling are *per se* unreasonable. *See e.g. Coolidge v. New Hampshire*, 403 U.S. 443, 444, 91 S.Ct. 2022, 2032, 29 L.Ed. 2d 564 (1971); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Exigent circumstances must be proven, *by the State*, to justify warrantless

intrusions into the home. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed. 2d 639 (1980).

■ In this case, the patrolman at the scene first knew only that a car had been wrecked and that the unknown driver could have been injured. When Barton arrived, the officer then knew where the driver had gone; that he had been injured somewhat, and that *Barton thought* the driver had been drunk at the time. Clearly, probable cause to arrest did not exist at this point. At best, the patrolman had a reasonable suspicion that the appellant had been driving under the influence. *See Lucas v. State*, 704 P.2d 1141, 1143 (Okl.Cr.1985); *Seher v. State*, 554 P.2d 66 (Okl.Cr.1976).

When Barton and the patrolman arrived at the appellant's home, Barton knocked at the door and called in, asking the appellant if he was alright. After receiving an affirmative response, Barton took it upon himself to enter, and the patrolman followed. Permission to enter was not given. Probable cause to search or arrest did not exist. The patrolman did not announce his presence, nor did he call out to ask the appellant to come to the door or ask his permission to enter.

■ The State, in reply, argues most forcefully that exigent circumstances existed which justify the patrolman's entrance and the subsequent arrest. The State bolsters its argument with additional reference to the facts that the patrolman was concerned for the appellant's physical well-being and that a police officer is charged with the duty of completing an accident report. Our attention is also directed at the important, possibly compelling, State interest in keeping our roadways safe from the threat of drunk drivers. Accepting all of the arguments presented by the State as true, we are still unable to sanction the warrantless intrusion into the appellant's home in this case.

As the United States Supreme Court has repeatedly stated, "warrantless felony arrests in the home are prohibited by the Fourth Amendment, absent probable cause *and* exigent circumstances." *Welsh v. Wisconsin*, 466 U.S. 740, 749, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984) citing *Payton v. New York*, supra., 445 U.S. at 583–590, 100 S.Ct. at 1378–1382. (emphasis added). This case is lacking at least one crucial element. Assuming exigent circumstances, *probable cause did not exist at the time of entry.*[1]

*Welsh v. Wisconsin, supra*, is on point with this case, although there are distinguishing facts. First, the police in *Welsh* could have had consent to enter the home, although the court presumed otherwise. *Id.*, 466 U.S. at 743 n. 1, 104 S.Ct. at 2094 n. 1. Second, the Wisconsin statutes at the time considered driving under the influence to be a relatively minor offense. And third, Welsh's car had not been damaged nor had Welsh been injured. However, in light of the significance of the constitutional issue involved, these are distinctions without a difference.

In the case now under consideration, when the patrolman first arrived at the appellant's home, the only valid "exigent circumstance" was his concern for the appellant's possible physical injuries. This concern was dissipated when he heard the appellant's response to Barton's inquiry. The other considerations raised by the State simply do not justify the intrusion. As the court concluded in *Welsh:*

"... a warrantless home arrest cannot be upheld simply because evidence of [the appellant's] blood alcohol level might have dissipated while the police obtained a warrant. To allow a warrantless home entry on these facts would be to approve unreasonable police behavior that the principles of the Fourth Amendment will not sanction ... such an arrest ... is clearly prohibited by the special protec-

---

**1.** While a second offense, in Oklahoma, is classified as a felony, a first offense is a misdemeanor. Here, the patrolman as yet had no reason to believe that anything other than a misdemeanor had been committed. As we point out, *infra,*

tion afforded the individual in his home by the Fourth Amendment." [2]

*Welsh v. Wisconsin*, 466 U.S. at 754, 104 S.Ct. at 2100.

We must conclude, therefore, that the appellant's arrest was unconstitutional. That being so, any evidence which resulted from that arrest is inadmissible. We are constrained to add, however, that our ruling on this assignment of error is necessarily limited to the unique facts of this case. Appellant's conviction for driving under the influence of alcohol must be REVERSED.

■ In light of the preceding conclusion, the only remaining assignment that remains to be addressed is raised as appellant's fourth proposition of error: That there was insufficient evidence to sustain the appellant's conviction for driving while his license had been revoked. Here, we disagree, yet need not discuss the merits of appellant's proposition in light of his failure to cite relevant authority for his argument. *See Van Voundenberg v. State*, 720 P.2d 328 (Okl.Cr.1986); *Hawkes v. State*, 644 P.2d 111 (Okl.Cr.1982). The appellant's misdemeanor conviction and sentence for driving while his license was revoked is AFFIRMED.

Accordingly, the appellant's conviction and sentence for Driving Under the Influence of Alcohol is REVERSED; his conviction and sentence for Driving While His Driver's License was Revoked is AFFIRMED. The cause is REMANDED to the District Court of Kay County for proceedings consistent with the views expressed herein.

BRETT, P.J., and PARKS, J., concur.

the officer had, at best, only a reasonable suspicion that a *misdemeanor* had been committed.

**2.** We point out that the quoted passage is preceded by the Court's recognition that Wisconsin considered D.U.I. as a minor, "non criminal, civil forfeiture offense ... is the best indication of the State's interest in precipitating an arrest ..." *Id.*, 466 U.S. at 754, 104 S.Ct. at 2100. We

do not think the Court considered this fact determinative, however, in light of its reliance on cases which clearly impose significant restraints on all warrantless entries. *See Id.*, 466 U.S. at 746–750, 104 S.Ct. at 2095–98. We also note that here, the patrolman had no probable cause to believe even a misdemeanor had been committed.