Martin Shane EDWARDS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–81–340.

Court of Criminal Appeals of Oklahoma.

Dec. 20, 1982.

Rehearing Denied Jan. 12, 1983.

Larry Lenora, Erwin, Butts & Lenora, Chandler, for appellant.

Jan Eric Cartwright, Atty. Gen., Susan Talbot, Asst. Atty. Gen., Chief, Appellate Crim. Div., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Martin Shane Edwards was convicted of Manslaughter in the First Degree, in the District Court of Lincoln County, Case No. CRF–80–99. He now appeals the sentence imposed of life imprisonment.

On June 21, 1980, witnesses Jim Waddell and Dale Morris Clark held a party at their house in Meeker, Oklahoma, which lasted all night and into the next morning. At

approximately 7:30 a.m. on June 22, 1980, Donald Ray Mounds, the victim, was being assisted by several witnesses in removing a motorcycle from his truck when he was stabbed once in the chest. Witness Dale Morris Clark testified that he saw the appellant stab the victim in the chest. Witnesses Clark, Waddell, Carl Owens and Bill Harwood testified that they heard the deceased say "Oh my God what did you do that for?" as he staggered away from the appellant. The appellant testified that he had no recollection of stabbing the victim.

■ In his first assignment of error, the appellant alleges that the magistrate erred by overruling his motion to reduce the charge of murder in the first degree to manslaughter in the first degree at the preliminary hearing. Appellant argues that there was insufficient evidence presented to warrant the murder in the first degree charge. However, a preliminary hearing before a magistrate does not require evidence sufficient to warrant a conviction, must show only that an offense has been committed and there is reason to believe the accussed committed the offense. *Hedgepath v. State,* 600 P.2d 348 (Okl.Cr. 1979). The preliminary hearing transcript reveals that the magistrate properly found sufficient evidence to bind the appellant over for trial on a charge of first degree murder. *Sexson v. State,* 620 P.2d 1326 (Okl.Cr.1980). Therefore appellant's first assignment of error is without merit.

■ In his second assignment of error, appellant alleges that the trial court erred by overruling his motion for directed verdict at the close of the State's evidence. Appellant argues there was insufficient evidence presented to prove murder in the

first degree. However, the right to challenge a ruling on a demurrer to the evidence is waived on appeal when, as here, the accused goes forward and offers evidence in the defense case in chief. *Shockey v. State,* 524 P.2d 33 (Okl.Cr.1974). Further, arguments concerning first degree murder are unavailable to the appellant since the jury convicted the appellant of the lesser included offense of manslaughter in the first degree. *Morrison v. State,* 628 P.2d 381 (Okl.Cr.1981). This assignment of error is without merit.

■ In his third assignment of error, appellant alleges that the trial court improperly instructed the jury on murder in the first degree. We note that appellant did not object at trial to the court's instructions and did not preserve this assignment of error in his motion for new trial or petition in error. *Maghe v. State,* 620 P.2d 433 (Okl.Cr.1980). Therefore this assignment of error is waived and without merit.

■ In his fourth assignment of error, appellant alleges that his constitutional due process and equal protection rights were infringed by the trial.court's order setting felony cases for pretrial and trial docket.[1] Specifically appellant alleges that the order effectively denied him the right to file any motions after a specific date which was thirteen (13) days prior to trial and denied him the right to plea bargain in good faith prior to trial. Initially we note that this assignment of error was not properly preserved in the motion for new trial. *Hawkins v. State,* 569 P.2d 490 (Okl.Cr.1977). Further, appellant has failed to allege or demonstrate how he was prejudiced by the order. This assignment of error is without merit.

---

1. The language of the order is as follows:

 The following styled criminal cases are set for pretrial conference and disposition on Thursday, October 9, 1980, at 1:30 P.M. All preliminary motions must be filed by Tuesday, October 7, 1980. . . .

 \* \* \* \* \* \*

 The court will not permit withdrawal of pleas for the purpose of presenting preliminary or pretrial motions after Thursday, October 9, 1980. . . .

 \* \* \* \* \* \*

 Cases ready for jury trial are hereby set for trial on date indicated beginning Monday, October 20, 1980 at 9:00 A.M.

In his fifth assignment of error, appellant alleges that the trial court erred by refusing to allow the defendant's expert witness, Dr. Walter Bowlan to testify as to his opinion of appellant's sanity during the commission of the crime. During an in camera hearing to determine the admissibility of Dr. Bowlan's testimony, Dr. Bowlan testified that in his opinion the appellant was temporarily insane at the time of the homicide due to the voluntary consumption [2] of drugs, specifically, LSD, speed, and qualudes over a 24 hour period.[3]

In the recent case of *Jones v. State*, 648 P.2d 1251 (Okl.Cr.1982), we said that voluntary intoxication is no defense to a crime except to the extent that the intoxication rendered the defendant incapable of forming the necessary mental element. We further said:

> To constitute insanity caused by intoxication, whether alcohol or drug induced, it must be caused from prolonged use of the intoxicant resulting in a fixed state of mental disease or defect; not merely a temporary mental condition existing during commission of the crime. The determination as to whether the prolonged use of the intoxicant has caused a fixed mental disorder is a question of fact for the jury. (at 1255)

In the instant case, the transcript reveals that the appellant did not contend that he was suffering from a mental disorder due to prolonged drug use, and further, Dr. Bowan testified that appellant's pshychotic state of mind was temporary.

■ While voluntary intoxication is not a complete defense to criminal cupability, it may be considered in determining whether the accused possessed the requisite criminal intent during the commission of the crime. *Jones,* supra. At trial, convincing evidence was introduced that intoxication rendered the appellant incapable of forming a deliberate intent to effect death and therefore the jury convicted the appellant under proper instructions of manslaughter in the first degree. This assignment of error is without merit.

■ In his sixth assignment of error, appellant alleges that the trial court abused its discretion in refusing to allow defense witness Lindy Kirschner to testify. In ruling that Kirschner would not be endorsed as a witness, the trial court said,

> The Court finds that due diligence has not been used by the defendant in discovering the witness and advising the witness of the Rule—sequestration of witnesses and since the witness has been in the courtroom all day, the Court will overrule the request to put her on the stand and waive the rule.

After the rule excluding witnesses from the courtroom during testimony has been invoked, it is solely within the discretion of

---

**2.** The appellant testified that he took LSD, crystal and qualudes prior to the homicide.

**3.** Dr. Bowlan testified at the in camera hearing as follows:

> Q. In your professional opinion, did Martin Edwards at the time of the commission of this act know the difference between right and wrong?
> A. A psychotic person does not know the difference between right and wrong, they're in another world.
> Q. Okay. So, in your professional opinion, he did not?
> A. In my professional opinion he did not.
> Q. This, uh, the effects of the LSD, would cause him to lose touch with reality?
> A. I not only think it could, I think in this case it did.

> Q. All right. Now, as I understand your conclusions from this interview, it would be that based on his consumption of drugs, L.S.D., speed and quaaludes, that he became psychotic, is that generally correct?
> A. Right.
> Q. Were you able to determine if this would be a temporary type of state for Mr. Edwards or is he chronically psychotic?
> A. No, I think that the time in itself, Counselor, has shown that it's temporary. He's obviously not psychotic now, in my opinion.
> A. Did he indicate that he'd ever become that way in the past?
> A. No, sir.
> Q. Then this would appear to be a one type—one shot event where he became—
> A. Yes, sir.
> Q. —right prior to the stabbing.

the trial court to grant exceptions. *Savage v. State,* 525 P.2d 1219 (Okl.Cr.1974). We find the trial court did not abuse its discretion because the witness sat through the trial for two days. Further, witness Kirschner's testimony regarding the appellant's competency at the time of his arrest was cumulative in nature. Therefore, this assignment of error is without merit.

 Finally, it is argued that the punishment which was imposed was excessive. A sentence of life imprisonment is within the statutory limits for manslaughter in the first degree and is not excessive in this case. AFFIRMED.

BRETT, P.J., and CORNISH, J., concur.