**Lonnie Joe DUTTON,**
**Plaintiff-Appellant,**

v.

**John N. BROWN and Attorney General of the State of Oklahoma, Defendants-Appellees.**

No. 85–2115.

United States Court of Appeals, Tenth Circuit.

April 11, 1986.

James W. Berry, Oklahoma City, Okl. (James W. Bill Berry & Associates, Oklahoma City, Okl., with him on briefs), for plaintiff-appellant.

David W. Lee, Asst. Atty. Gen., Chief, Criminal & Federal Divisions, Oklahoma City, Okl. (Michael C. Turpen, Atty. Gen. of Oklahoma and Tomilou Gentry Liddell, Asst. Atty. Gen., Deputy Chief, Crim. Div., Oklahoma City, Okl., with him on brief), for defendants-appellees.

Before MOORE, ANDERSON and BAL-DOCK, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

This is an appeal from a judgment denying appellant's petition for a writ of habeas corpus. The petitioner, Lonnie Joe Dutton, was convicted by a state jury of first-degree murder. In accordance with Oklahoma's bifurcated trial statute, the same

jury subsequently sentenced him to death by lethal injection.

Petitioner raises four issues on appeal regarding the constitutional validity of his state trial: (1) whether he was denied effective assistance by his trial counsel, who allegedly failed to properly prepare for the sentencing phase of the case; (2) whether the state trial judge improperly excluded the testimony of petitioner's mother in the sentencing phase because of a sequestration order entered at trial; (3) whether a prospective juror who indicated during voir dire that it would be difficult for him to separate the possible sentencing consequences from his deliberations on the evidence of guilt was improperly excused for cause; and (4) whether the prosecutor's closing argument was improper. We answer these questions in the negative and affirm the judgment of the district court.

Petitioner's state court-appointed trial counsel, petitioner's mother and father, and an expert on criminal defense testified at an evidentiary hearing before the district court. In addition, the court requested and reviewed certain medical records pertaining to petitioner which had not been introduced in evidence in the state proceedings. After reviewing all the evidence, the court denied the petition and this appeal followed.

The prosecution's evidence at the state trial established that petitioner and Carl Morgan planned to rob a bar in Oklahoma City. While Morgan waited in a car, petitioner went into the bar and ultimately shot and killed the proprietor and wounded the proprietor's mother. According to the evidence established at the habeas hearing, the defense strategy at trial was to call petitioner to the stand to elicit testimony that Mr. Dutton had acted under the duress of Morgan, who was twenty years his senior. However, during trial, petitioner became agitated and ultimately refused to testify or to communicate with his attorney and with the court. The defense, therefore, rested without calling witnesses.

During the sentencing phase of the trial, the prosecution, in keeping with its statutory burden to establish aggravating circumstances under Okla.Stat.Ann. tit. 21 § 701.10, presented evidence that Mr. Dutton had admitted involvement with Morgan in another robbery-murder and a robbery-assault. Defense counsel called one witness, through whom was introduced a previously suppressed confession containing a statement by Mr. Dutton that he was afraid of Morgan. However, when counsel attempted to call petitioner's mother, the state court, acting on its own, refused to allow her to testify. The court ruled that because the mother had attended the first phase of the trial, her testimony would violate the sequestration order entered at the beginning of trial. Although defense counsel objected to this ruling, he failed to make an offer of proof. Again, because petitioner would not respond to a call to the stand, the defense rested without his testimony. The jury sentenced petitioner to death after deliberating for approximately six hours.

## I.

Petitioner contends his Sixth Amendment right to counsel was contravened because the performance of his court-appointed trial counsel fell below acceptable standards. Petitioner claims counsel failed to adequately investigate, prepare, and present a case in mitigation during the sentencing phase of the trial, and had he done so, the jury would have sentenced Mr. Dutton to life imprisonment rather than death. Mr. Dutton asserts that defense counsel failed to secure, let alone introduce, evidence that he had been hospitalized for psychiatric treatment and that the records from the hospitalization indicate he suffered from a mental impairment. He further asserts that no effort was made by defense counsel to confer with Mr. Dutton's mother and others to gain insight into his history that would have been helpful in the sentencing phase.

To support the contention that trial counsel's performance did not meet acceptable standards, Mr. Dutton called an Oklahoma public defender to testify at the habeas hearing as an expert on criminal defense.

The expert expressed the opinion that trial counsel had not prepared and did not have a strategy to present evidence of mitigating circumstances to the jury. The expert contended that defense counsel should have presented evidence to show Mr. Dutton was unstable and had a history of mental problems. He concluded that trial counsel did not properly investigate and prepare for the sentencing phase because he failed to talk to petitioner's family and employer. The expert expressed the belief that defense counsel in a capital offense case must make every possible effort to contact those who knew the background and character of the accused in order to provide pertinent evidence of mitigation, and this was not done.

■ Despite these expert opinions, however, the inquiry before us is particularized. We must determine whether there was a breakdown in the adversarial system of justice caused by the acts or omissions of counsel and whether we can now say that absent those acts or omissions, the outcome of the punishment phase of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). While it is petitioner's contention that trial counsel omitted investigation and presentation of a number of factors, the question we must answer is whether those factors would have been relevant to the issue of mitigation and would have resulted in a different outcome under the instructions given by the state court.

■ The jury was instructed there were eight factors it should consider in determining whether mitigating circumstances existed in the evidence. In substance, the instructions enumerated the following factors:

1. Whether the defendant has no significant history of prior criminal activity;

2. Whether the murder was committed while the defendant was under the influence of extreme mental or emotional disturbance;

3. Whether the victim was a participant in the defendant's homicidal conduct or consented to the homicidal act;

4. Whether the murder was committed under circumstances in which the defendant believed to provide a moral justification or extenuation for his conduct;

5. Whether the defendant was an accomplice in a murder committed by another person and his participation in the homicidal act was relatively minor;

6. Whether the defendant acted under duress or the domination of another person;

7. Whether, at the time of the murder, the capacity of the defendant to appreciate the criminality or wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental diseases or intoxication; and

8. The age of the defendant at the time of the crime.[1]

After reviewing the record, we conclude the only mitigating circumstance available to the defense was that of duress, the sixth factor. Even if we accept petitioner's hypotheses of how trial counsel failed, we are still convinced that none of those failures resulted in the omission of facts leading to proof of the enumerated mitigating circumstances.

Recognizing Oklahoma liberally treats the admissibility of evidence to support a contention of mitigation,[2] petitioner argues the circumstances of his past life should have been brought to the attention of the jury. For example, while he does not contend that he was suffering from "extreme mental or emotional disturbance," as that

---

1. Petitioner does not argue the trial court erred in instructing the jury by either misstatements of the law or omissions of relevant mitigating factors. Moreover, these factors are consistent with judicial construction of the phrase "any mitigating circumstances" in *Chaney v. State*, 612 P.2d 269 (Okla.Crim.App.1980), *cert. denied*, 450 U.S. 1025, 101 S.Ct. 1731, 68 L.Ed.2d 219 (1981).

2. *See, e.g., Chaney v. State*, 612 P.2d 269 (Okla. Crim.App.1980), *cert. denied*, 450 U.S. 1025, 101 S.Ct. 1731, 68 L.Ed.2d 219 (1981).

term was used in the instructions, he suggests that the records from two hospitalizations several years before his conviction should have been produced and explored during the punishment phase to establish his mental impairment. Yet, the court examined those records at the habeas hearings and concluded:

> I find no indication in the Baptist Hospital records that Dutton is mentally ill and there is no recommendation for confinement or additional psychiatric treatment.
>
> The medical records from South Community Hospital re[f]lect that Dutton was admitted there on more than one occasion, but the reason[s] for those admissions were varied, e.g., drug overdosages, accidents, infectious hepatit[i]s, etc. The South Community Hospital records are completely void of any indication of mental illness or disorder.

Our own review of those hospital records leads us to agree with the district court.

Petitioner's expert contended trial counsel had no strategy for the punishment phase of the trial, but the record clearly indicates the contrary. As it did during the guilt phase of the trial, the defense focused on the conduct of Morgan in an effort to demonstrate the older man had a dominating influence upon petitioner. This strategy is in keeping with the mitigating circumstance of duress defined in the instructions, and it is the only one which is factually supportable within the framework of this case.

Despite the efforts of trial counsel, the jury did not accept the defense theory. Yet, that is not an indication counsel was ineffective, *United States v. Miller*, 643 F.2d 713 (10th Cir.1981); *United States v.*

*Vader*, 630 F.2d 792 (10th Cir.), *cert. denied*, 449 U.S. 1037, 101 S.Ct. 616, 66 L.Ed.2d 500 (1980), nor does the outcome mean the strategy he employed was improper, *United States v. Glick*, 710 F.2d 639 (10th Cir.1983), *cert. denied*, 465 U.S. 1005, 104 S.Ct. 995, 79 L.Ed.2d 229 (1984). So long as that strategy is reasonably grounded in fact and the options exercised by counsel reasonably flow from the circumstances, counsel cannot be faulted for the outcome of the defense. *Glick.*

Since the only factually supportable theory of mitigation was duress, we do not believe trial counsel's performance fell below acceptable standards of representation when he chose not to interview family members, other than petitioner's parents,[3] his employer, or others. While the evidence those persons would have been able to present could have created an atmosphere of sympathy for the petitioner, it would have provided remote proof on the issue of mitigation. Trial counsel did not attempt to inject sympathy into the evidence, and that was a choice we cannot fault in retrospect. The choice was made in the exercise of counsel's professional judgment, and we cannot say as a consequence of the verdict that he did not act within the proper standards of conduct. *See, Glick*, 710 F.2d at 644; *Briley v. Bass*, 750 F.2d 1238 (4th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1855, 85 L.Ed.2d 152 (1985); *Celestine v. Blackburn*, 750 F.2d 353 (5th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 3490, 87 L.Ed.2d 624 (1985); *Brooks v. Estelle*, 697 F.2d 586 (5th Cir.1982); *Stanley v. Zant*, 697 F.2d 955 (11th Cir.1983) *cert. denied*, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984).[4]

---

**3.** The district court found that trial counsel did interview petitioner's mother during his trial preparation, contrary to her testimony at the habeas hearing. That finding is supported by the testimony of counsel and not clearly erroneous. We are bound thereby. *See United States v. Beachner Construction Co., Inc.*, 729 F.2d 1278 (10th Cir.1984).

**4.** Petitioner suggested counsel was ineffective because, having asked for the sequestration of witnesses, he did not foresee the need to use

petitioner's mother as a witness in mitigation and accordingly did not keep her from the courtroom to avoid her subsequent exclusion. There are several things wrong with this position. First, defense counsel assumed the order applied only during the first phase of trial and was taken aback by the *sua sponte* ruling of the state judge. Second, because the prosecution did not object to the mother's testimony, it appears that assumption was not unwarranted. Third, arguing now that counsel should have

We must, therefore, conclude that trial counsel did function within the appropriate and acceptable standard for defense counsel and that there was no breakdown in the adversarial system. We also conclude that, viewing the totality of the evidence presented to the jury, had trial counsel done those things which petitioner now contends he should have done, the outcome of the penalty phase would not have been different.

## II.

Petitioner argues the state court's refusal to allow his mother to testify during the second phase denied him the effective assistance of counsel. This is an artful means of turning an arguable error in state procedure into an issue cognizable in federal court. Nevertheless, we are unpersuaded.

In a strict application of its sequestration order, the state court, in effect, ruled Mrs. Dutton's testimony incompetent. Although no offer of proof was made at trial, trial counsel stated at the habeas hearing he had talked to Mrs. Dutton prior to the penalty phase and prepared her to testify. He said:

I told her if I had to call her that I would want her to talk about her son, his immaturity, et cetera, et cetera. Related to that. There was no evidence—that she could give us no evidence other than, "My son is immature, he doesn't think real well, and please don't give my son the death penalty."

. . . .

[She was going to testify to] [t]he fact that her son is a slow learner, the fact that he's not very smart, he's a follower, and primarily a plea to the jury, "Look, I don't care what my son's done, just don't," you know, "Don't take his life, too. Enough people's [sic] died."

On cross-examination, he continued:

Q  Do you feel that it would have helped during the second stage of the proceedings, helped Mr. Dutton in getting a life sentence, as opposed to a death sentence?

A  If I had done what? Been allowed to have—

Q  If you had put her on the witness stand and questioned her concerning the background of Mr. Dutton, concerning his special education problems, being a slow learner, some of his drug problems and things of that nature. His background, his family background.

A  You want my opinion?

Q  Do you feel that from what you've heard, or what you know, do you feel it would have affected the outcome of that decision?

A  No, sir, I do not.

It is in this context that petitioner asserts the state trial court effectively denied petitioner the opportunity to present mitigating evidence. We cannot agree.

■  First, trial counsel offered and the court received the copy of the confession containing Mr. Dutton's statement that he was afraid of Morgan. That was evidence supportive of the mitigating factor of duress. Second, the trial judge was not aware that Mrs. Dutton was the only other witness that was available. Had that fact been made apparent or had the scope of her proposed testimony been disclosed, the ruling might have been different. Because the court was not made aware of the effect of its ruling, we cannot say it precluded mitigating evidence or that it effectively denied petitioner his right to counsel.

The trial court strictly enforced its sequestration rule. Under state law, it was within its discretion to do so. *Edwards v. State*, 655 P.2d 1048 (Okla.Crim.App.1982). In the absence of a showing to the state court of how that enforcement affected the presentation of mitigating evidence, petitioner's contention is not logical. As did the district court, we conclude the evidence Mrs. Dutton would have offered would

anticipated the unexpected is the sort of "Monday morning quarterbacking" we have previously decried. *Vader,* 630 F.2d at 794.

have been irrelevant to the issue of mitigation; therefore, petitioner has failed to show how he was prejudiced by this ruling.

### III.

Petitioner argues that a venireman was improperly excused for cause because he expressed reservations about the death penalty. The record indicates, however, the prospective juror stated that his consideration of the evidence of guilt would be colored by the possibility he might be called upon to impose the death penalty. Thus, he was excused, not because he would not impose the ultimate penalty, but because he might not be able to base a verdict of guilt or innocence solely upon the evidence.

The crucial inquiry is whether the venireman could follow the court's instructions and obey his oath, notwithstanding his views on capital punishment. *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980). While a prospective juror cannot be excused simply for expressing reservations about the death penalty, *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), such is not this case. This venireman was excused because he candidly admitted that he would not be able to consider the question of guilt separate from the death penalty. Consequently, he raised doubts whether he could follow the court's instructions and impartially determine the basic issue. His excusal was not prejudicial.

### IV.

Petitioner argues the prosecutor made improper remarks in his closing argument to the jury. He relies upon *Caldwell v. Mississippi*, — U.S. ——, 105 S.Ct. 2633, 2639, 86 L.Ed.2d 231 (1985), which held it "constitutionally impermissible" for a prosecutor to suggest to a jury that the ultimate responsibility for the imposition of the death penalty did not rest with the jury but with the appellate court. *Caldwell* is inapposite.

The prosecutor here did not suggest the onus of choice rested with someone other than the jury. In an attempt to respond to a defense argument, the prosecutor said:

First of all, [Defense Counsel] argues that the final decision is yours, and of course, to some degree it is. But you are, as I am, as Judge Theus is, as all the courts are, part of the process. We are not functioning as individuals. I am not here as Andy Coats. I am here as the District Attorney.

And you are not here in your individual capacities. You are here as the jury. And Judge Theus is not our good friend, Harold, off the Bench. He is his Honor, Judge Harold Theus, when he is in this Courtroom.

And we are all part of the law and it is the law that makes us work. So it has to be in that attitude, in that frame of mind, that you approach the problem.

This issue has been raised for the first time in this court; nevertheless, it is clear that, when taken in context, the statement of the prosecutor was not constitutionally impermissible. The statement was not designed to, nor did it, suggest to the jury that it was not ultimately responsible for deciding Mr. Dutton's punishment. The prosecutor merely underscored that the jury was part of the whole system of justice, and within that system it had a grave responsibility. Indeed, the tenor of the remainder of the closing was that the crucial determination of punishment was the sole function of the jury. Thus, even though the issue could be disregarded as not before us, given petitioner's failure to object at trial, we choose to overlook that point and hold that no prejudice resulted to the petitioner as a result of this comment.

AFFIRMED.