Lonnie Joe DUTTON,
Petitioner-Appellant,

v.

John N. BROWN and the Attorney General of the State of Oklahoma, Respondents-Appellees.

Oklahoma Criminal Defense Lawyers Association, Amicus Curiae.

No. 85–2115.

United States Court of Appeals, Tenth Circuit.

Feb. 19, 1987.

James W. Berry of James W. "Bill" Berry and Associates, Oklahoma City, Okl. (Julius L. Chambers and John Charles Boger, New York City, with him on the Supplemental Brief of petitioner-appellant on Rehearing En Banc), for petitioner-appellant.

David W. Lee, Asst. Atty. Gen., Chief, Criminal & Federal Divisions, Oklahoma City, Okl. (Michael C. Turpen, Atty. Gen. of Oklahoma and Tomilou Gentry Liddell, Asst. Atty. Gen., Deputy Chief, Crim. Div., Oklahoma City, Okl., with him on brief), for respondents-appellees.

Mary E. Bane, Oklahoma City, Okl., filed an amicus curiae brief for the Oklahoma Criminal Defense Lawyers Ass'n.

Before BARRETT, McKAY, LOGAN, SEYMOUR, MOORE, ANDERSON, TACHA and BALDOCK, Circuit Judges.

## ON REHEARING EN BANC

BALDOCK, Circuit Judge.

Lonnie Joe Dutton (petitioner) filed a petition for a writ of habeas corpus in the United States District Court for the District of Oklahoma after exhausting all his state remedies. He contends that his conviction for first degree murder and death sentence violated various provisions of the federal Constitution. The district court denied his petition, and a panel of this court affirmed that denial. 788 F.2d 669 (10th Cir.1986). That decision was vacated when the majority of the active judges of the circuit voted to have the appeal determined by an en banc panel. We reverse the district court and direct the issuance of a writ of habeas corpus.

I.

Petitioner was arrested and charged with the January 1977 murder of Carl Eugene Gray. The evidence presented at the state trial established that petitioner and Carl Morgan planned to rob a bar in Oklahoma City. While Morgan waited in a car, petitioner went into the bar and ultimately shot and killed the proprietor, Gray, and severely wounded Gray's mother.

Petitioner was tried in the District Court of Oklahoma County, Oklahoma. At the beginning of the trial, petitioner's attorney requested the sequestration of witnesses. Responding to this request, the trial judge cautioned that "anyone who expects to testify in this case remain outside the courtroom subject to call. You're admonished not to discuss your testimony, one with the other. If you remain here, you may not be allowed to testify. Counsel is on notice, look after your own witnesses." Record

vol. I at 208. Jean Dutton (Mrs. Dutton), petitioner's mother, attended the trial despite this caution.

Dutton was convicted of murder in the first degree. Oklahoma law provides for a separate sentencing proceeding whereby the same jury which considered guilt determines whether a defendant should be sentenced to death or life imprisonment. Okla.Stat. tit. 21, § 701.10 (West 1983).[1] During this sentencing phase, Mrs. Dutton was called to testify on behalf of the defense. The trial judge, *sua sponte*, prohibited Mrs. Dutton from testifying because she had attended the trial. Thereafter, the defense rested, and petitioner was sentenced to death by lethal injection.

Petitioner's conviction and sentence were affirmed by the Oklahoma Court of Criminal Appeals and a petition for writ of certiorari to the United States Supreme Court was denied. *Dutton v. State*, 674 P.2d 1134 (Okla.Crim.App.1984), *cert. denied*, 467 U.S. 1256, 104 S.Ct. 3548, 82 L.Ed.2d 850 (1984). He then sought relief pursuant to Oklahoma's Post-Conviction Procedure Act, Okla.Stat.Ann. tit. 22, § 1081 (West 1986), in the District Court of Oklahoma County, Oklahoma, which was denied. Post-conviction relief also was denied by the Oklahoma Court of Criminal Appeals, Record vol. I at 19, and the United States Supreme Court again denied certiorari. *Dutton v. Oklahoma*, 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 863 (1985). The present federal habeas corpus proceeding was then instituted by Dutton.

The issues before this court are (1) whether the state trial court improperly excused a venireman because of his views on the death penalty; (2) whether the prosecutor's closing argument was improper; (3) whether petitioner was denied effective assistance of counsel at his trial; and (4) whether the state trial judge improperly excluded the testimony of petitioner's mother in the sentencing proceeding. We address these issues *seriatim*.

II.

### A. *Exclusion of Venireman* [2]

Petitioner argues that a venireman was improperly excused for cause because he expressed reservations about the death penalty. The record indicates, however, the prospective juror stated that his consideration of the evidence of guilt would be colored by the possibility he might be called upon to impose the death penalty. Thus, he was excused, not because he would not impose the ultimate penalty, but because he might not be able to base a verdict of guilt or innocence solely upon the evidence.

The crucial inquiry is whether the venireman could follow the court's instructions and obey his oath, notwithstanding his views on capital punishment. *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980). While a prospective juror cannot be excused simply for expressing reservations about the death penalty, *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), such is not this case. This venireman was excused because he candidly admitted that he would not be able to consider the question of guilt separate from the death penalty. Conse-

---

1. Section 701.10 provides as follows:

   Upon conviction or adjudication of guilt of a defendant of murder in the first degree, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death or life imprisonment. The proceeding shall be conducted by a trial judge before the trial jury as soon as practicable without presentence investigation. If the trial jury has been waived by the defendant and the state, or if the defendant pleaded guilty or nolo contendere, the sentencing proceeding shall be conducted before the court. In the sentencing proceeding, evidence may be presented as to any mitigating circumstances or as to any of the aggravating

circumstances enumerated in this act. Only such evidence in aggravation as the state has made known to the defendant prior to his trial shall be admissible. However, this section shall not be construed to authorize the introduction of any evidence secured in violation of the constitutions of the United States or of the State of Oklahoma. The state and the defendant or his counsel shall be permitted to present argument for or against sentence of death.

2. We agree with the earlier panel's disposition of this issue and incorporate below the panel's discussion of it.

quently, he raised doubts whether he could follow the court's instructions and impartially determine the basic issue. His excusal was not prejudicial.

### B. , *Prosecutor's Remarks*

Petitioner argues the prosecutor made improper remarks in his closing argument to the jury. In response to petitioner's closing argument, the prosecutor said:

> First of all, [Defense Counsel] argues that the final decision is yours, and of course, to some degree it is. But you are, as I am, as Judge Theus is, as all the courts are, part of the process. We are not functioning as individuals. I am not here as Andy Coats. I am here as the District Attorney.

> And you are not here in your individual capacities. You are here as the jury. And Judge Theus is not our good friend, Harold, off the Bench. He is his Honor, Judge Harold Theus, when he is in this Courtroom.

> And we are all part of the law and it is the law that makes us work. So it has to be in that attitude, in that frame of mind, that you approach the problem.

He challenges these remarks on the basis of the Supreme Court's ruling in *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). In *Caldwell*, the Court held it "constitutionally impermissible" for a prosecutor to suggest to a jury that the ultimate responsibility for the imposition of the death penalty did not rest with the jury but with the appellate court.

We begin by noting that petitioner's counsel did not object to these remarks at trial, and they are challenged for the first time in this habeas appeal. Under Oklahoma law, error of this nature must be raised by objection at trial, or it is waived. *Smith v. State*, 727 P.2d 1366 (Okla.Crim. App.1986). Additionally, failure to raise the issue on direct appeal bars it from being raised at a later time. *Cartwright v. State*, 708 P.2d 592, 593 (Okla.Crim.App. 1985), *cert. denied*, — U.S. —, 106 S.Ct.

837, 88 L.Ed.2d 808 (1986). A preliminary issue, therefore, is whether petitioner defaulted his constitutional claim by failing to raise it at trial and pursue it on appeal.

▇▇▇▇ A federal habeas court evaluates the failure to preserve a claim at trial and appellate defaults [3] under the same standard. *Smith v. Murray*, — U.S. —, 106 S.Ct. 2661, 2665, 91 L.Ed.2d 434 (1986). In order to obtain review of a defaulted constitutional claim, a federal habeas petitioner must show cause for the procedural default and prejudice attributable thereto. *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977); *Murray v. Carrier*, — U.S. —, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986). We believe cause existed for the procedural default because trial counsel, at the time of trial in 1979, could not have known that the prosecutor's remarks might have raised constitutional questions. The law petitioner relies on did not become established until the *Caldwell* decision in 1985. We cannot expect trial counsel "to exercise extraordinary vision or to object to every aspect of the proceeding in the hope that some aspect might mask a latent constitutional claim." *Engle v. Isaac*, 456 U.S. 107, 113, 102 S.Ct. 1558, 1564, 71 L.Ed.2d 783 (1982). In *Reed v. Ross*, 468 U.S. 1, 17, 104 S.Ct. 2901, 2911, 82 L.Ed.2d 1 (1984), the Court ruled that cause exists for defense counsel's failure to raise an issue when a subsequent Supreme Court decision articulates a constitutional principle that had not been recognized previously. Consequently, the failure of counsel to raise a constitutional issue reasonably unknown to him satisfied the "cause" requirement. *Id.* at 14, 104 S.Ct. at 2909. *Adams v. Wainwright*, 804 F.2d 1526 (11th Cir.1986) (reaching the same conclusion in a case also involving a *Caldwell* defense). We also conclude that the alleged error would be prejudicial, if valid, and therefore turn to the merits of the issue.

▇▇▇▇ It is clear that, when taken in context, the statement of the prosecutor was

---

**3.** We express no opinion as to the appropriate standard to be applied when a defendant's counsel decides not to appeal. *See Murray v. Carrier,* — U.S. —, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986).

not constitutionally impermissible. The statement was not designed to, nor did it, suggest to the jury that it was not ultimately responsible for deciding Mr. Dutton's punishment. The prosecutor merely underscored that the jury was part of the whole system of justice, and within that system it had a grave responsibility. Indeed, the tenor of the remainder of the closing was that the crucial determination of punishment was the sole function of the jury. Thus, we hold that no prejudice resulted to the petitioner as a result of this comment.

### C. *Assistance of Counsel*

Petitioner alleges he was denied effective assistance of counsel because his court-appointed trial lawyer neither adequately investigated possible sources of mitigating evidence nor offered such evidence to the jury during the sentencing proceeding. He also argues that his attorney failed to request jury instructions on mitigating evidence and to advise his mitigating witness, Mrs. Dutton, to remain outside the courtroom after the court ordered witness seclusion. As discussed below, these alleged deficiencies, viewed either individually or collectively, do not constitute ineffective assistance of counsel.

The sixth amendment to the United States Constitution explicitly entitles one accused of a crime "to have the Assistance of Counsel for his defence." The Supreme Court has recognized this provision means the right to "effective" assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court set forth guidelines for determining whether a criminal defendant was deprived of effective assistance of counsel. The Court instructed that reversal is required only when a defendant demonstrates that (1) counsel's performance was deficient and (2) the deficiency prejudiced his defense. *Id.* at 687, 104 S.Ct. at 2064–65.

To prove deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065. In assessing attorney performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." *Id.* at 689, 104 S.Ct. at 2065–66. Bearing in mind that this is a "highly deferential" review, *id.*, an attorney's conduct must be evaluated in light of the circumstances facing him at the time of trial. A court which makes this evaluation must be especially vigilant to avoid the "distorting effects of hindsight." *Id.*

Although the assessment of attorney representation is to be based on an objective standard, ultimately, the decision is left to the "good sense and discretion" of the reviewing court. *McMann v. Richardson*, 397 U.S. at 771, 90 S.Ct. at 1449. Thus, any conclusion will be influenced significantly by the subjective reactions and personal judgment of the reviewing judge or panel. *Denton v. Ricketts*, 791 F.2d 824, 827 (10th Cir.1986). Though prevailing norms of practice as embodied in bar association standards are helpful, whether a particular attorney's conduct falls within the boundaries of "reasonable professional assistance" will depend upon the particular facts and circumstances of a case. In this case, every court which considered the question (both the Oklahoma district court and court of appeals as well as the federal district court and a panel of this court) found trial counsel's performance to be "effective." After reviewing the trial record, we agree with that assessment.

Petitioner asserts that his trial counsel was ineffective because, although counsel was aware that Mrs. Dutton would be called as a mitigating witness, he failed to exclude her from the courtroom after the sequestration order. Petitioner's attorney requested the sequestration order at the beginning of the guilt proceeding, but assumed it applied only to that proceeding. Based on that assumption, he permitted Mrs. Dutton to attend the guilt proceeding. He also permitted her to attend the sentencing proceeding because an exclusion

order had not been requested at its commencement.

When petitioner's attorney called Mrs. Dutton as a witness, the prosecuting attorney did not object. Nevertheless, the trial judge immediately halted the proceedings and called the attorneys into his chambers to discuss the matter off the record. When the proceedings resumed, the trial judge ruled that Mrs. Dutton would not be allowed to testify due to her violation of his sequestration order. Petitioner's attorney objected and argued that the sequestration order was not applicable to the sentencing proceeding and that the expected testimony would not relate to any evidence presented during the guilt phase. The judge, however, adhered to his initial ruling.

Although it would have been prudent for counsel to have requested a clarification of the sequestration order at the beginning of the trial, we cannot conclude that counsel's failure to exclude Mrs. Dutton from the courtroom rendered his assistance ineffective. There was a reasonable basis for his belief the sequestration order would not apply to the sentencing proceeding. As previously noted, Oklahoma law provides for a bifurcated trial for death penalty cases. Okla.Stat.Ann. tit. 21, § 701.10. That statute clearly states "separate sentencing proceeding" and, therefore, it was reasonable for counsel to believe the rule of sequestration applied only to the proceeding in which it was invoked, i.e., the guilt proceeding. The prosecution may have shared that belief because it did not object to the mother's testimony. In any event, whether an order of sequestration applies to both parts of a bifurcated trial is unsettled[4] and counsel's belief does not constitute ineffective assistance of counsel.

■ Petitioner also argues that the circumstances of his past life should have been brought to the attention of the jury and that his attorney was ineffective because he did not adequately investigate or present mitigating evidence.[5] Trial counsel's strategy for the sentencing proceeding was to focus on petitioner's predisposition, due to certain character defects, towards the dominating influence of older men. This was to be shown primarily through the testimony of petitioner's mother. We cannot fault counsel for failing to anticipate the unexpected, i.e., the trial court's *sua sponte* exclusion of Mrs. Dutton. *United States v. Vader,* 630 F.2d 792, 794 (10th Cir.), *cert. denied,* 449 U.S. 1037, 101 S.Ct. 616, 66 L.Ed.2d 500 (1980). Although more could have been done to investigate sources of mitigating evidence, we agree with the conclusion reached by the many judges that have already reviewed this issue that trial counsel's preparation and trial strategy satisfy the sixth amendment's guarantee of effective assistance of counsel.

■ Petitioner's final argument in support of his theory of ineffective assistance of counsel is that trial counsel failed to request jury instructions on mitigating evidence. We note that neither the prosecution nor petitioner's attorney submitted instructions for either the guilt or the sentencing proceeding. The instructions given by the court listed eight possible mitigating factors, including duress.[6] Petitioner does

---

4. Law on this point is virtually nonexistent. We note, however, that the Louisiana legislature found it necessary to explicitly state in its death penalty statute that a sequestration order applies to the sentencing proceeding. *State v. Toomer,* 395 So.2d 1320, 1334–35 (La.1981) (quoting La.Code Crim.Proc. art. 905.1(A)).

5. At trial, petitioner's counsel became aware of petitioner's psychological problem and his psychiatric medical history. Counsel moved for a psychiatric evaluation and for a continuance to review the medical documents he obtained from hospitals in which petitioner had been committed. Record vol. I at 193–202.

6. The court instructed the jury as follows:

You are instructed that mitigating circumstances are not specifically enumerated in the statutes of this State but the law of this State sets up certain minimum mitigating circumstances you shall follow as guidelines in determining which sentence you impose in this case. You shall consider any or all of these minimum mitigating circumstances which you find apply to the facts and circumstances of this case. You are not limited in your consideration to these minimum mitigating circumstances. You may consider any additional mitigating circumstance, if any, you find from the evidence in this case. What are and what are not additional mitigating circumstances is for you the jury to determine.

not argue that a relevant mitigating factor was omitted or that the law was misstated. We find that these factors are consistent with the judicial construction of the phrase·· "any mitigating circumstances" contained in § 701.10, *Van Woundenberg v. State,* 720 P.2d 328, 336 (Okla.Crim.App.1986), and conclude that petitioner was not prejudiced by counsel's failure to submit instructions on mitigation. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

### D. *Mitigating Testimony*

■ The critical question in this case is whether the petitioner was denied a federal constitutional right when the trial court, on its own initiative, precluded the jury from considering Mrs. Dutton's testimony. As discussed below, it is apparent from the record in this case, as well as the context of the proceeding and the nature of the witness, that at least some of Mrs. Dutton's testimony might have been relevant mitigating evidence. The Supreme Court's decision in *Skipper v. South Carolina,* —— U.S. ——, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986) dictates the conclusion that the state

---

The following, if true, would be the minimum mitigating circumstances as provided by law to be considered by you:
1. The defendant has no significant history of prior criminal activity;
2. The murder was committed while the defendant was under the influence of extreme mental or emotional disturbance;
3. The victim was a participant in the defendant's homicidal conduct or consented to the homicidal act;
4. The murder was committed under circumstances which the defendant believed to provide a moral justification or extenuation for his conduct;
5. The defendant was an accomplice in a murder committed by another person and his participation in the homicidal act was relatively minor;
6. The defendant acted under duress or under the domination of another person;
7. At the time of the murder, the capacity of the defendant to appreciate the criminality (wrongfulness) of his conduct or to conform his conduct to the requirement of law was impaired as a result of mental disease or . intoxication;
8. The age of the defendant at the time of the crime.

7. Although the decision in *Skipper* was rendered almost seven years after petitioner was tried, we are bound to apply that holding to this case.

---

trial judge erred by refusing to permit counsel the opportunity to present this evidence to the sentencing jury. As a consequence, the United States District Court erred by denying the writ of habeas corpus. We, therefore, must reverse and remand.[7]

A review of the evolution of the Supreme Court's position on mitigating evidence in death penalty cases is instructive in making our decision in this case. In *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), a plurality observed that the "death penalty is qualitatively different" from any other sentence, *id.* at 305, 96 S.Ct. at 2991, and that " 'individual culpability is not always measured by the category of the crime committed.' " *Id.* at 298, 96 S.Ct. at 2988 (quoting *Furman v. Georgia,* 408 U.S. 238, 402, 92 S.Ct. 2726, 2810, 33 L.Ed.2d 346 (1972)) (Burger, C.J., dissenting). The mandatory death penalty statute was held invalid because it did not allow for consideration of the "character and record of the individual offender or the circumstances of the particular offense...." *Id.* at 304, 96 S.Ct. at 2991.

---

The same reasons that require the retroactive application of *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), *Songer v. Wainwright,* 769 F.2d 1488, 1489 (11th Cir.1985) (en banc), also call for its application in this case. *See generally Hankerson v. North Carolina,* 432 U.S. 233, 240–44, 97 S.Ct. 2339, 2343–46, 53 L.Ed.2d 306 (1977); *Rose v. Engle,* 722 F.2d 1277, 1278–81 (6th Cir.1983), *cert. denied sub nom., Tate v. Rose,* 470 U.S. 1003, 105 S.Ct. 1353, 84 L.Ed.2d 376 (1985); *Woodard v. Sargent,* 753 F.2d 694, 695–97 (8th Cir.1985).

We are aware that petitioner may not have challenged Mrs. Dutton's exclusion on constitutional grounds on direct appeal. It is clear, however, that it is raised in the application for post-conviction relief and considered by the state district court. Record vol. entitled "Criminal Appeal-Original Record" at 3 and 33. In affirming, the Oklahoma Court of Criminal Appeals found no procedural bar concerning this issue. Record vol. I at 19–20. When a state court considers a federal constitutional claim on the merits, notwithstanding a procedural bypass, the federal habeas court also must determine the issue. *Lefkowitz v. Newsome,* 420 U.S. 283, 292 n. 9, 95 S.Ct. 886, 891 n. 9, 43 L.Ed.2d 196 (1975); *Westbrook v. Zant,* 704 F.2d 1487, 1491 n. 6 (11th Cir.1983).

In *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978), Chief Justice Burger, writing for a plurality of the Court, ruled that the eighth and fourteenth amendments require that the sentencer "not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death" (emphasis in original). The Ohio statute, which did not permit the sentencer to consider, as mitigating factors, character, prior record, age, lack of specific intent to cause death, and the degree of involvement in the crime, was found to be constitutionally infirm. The Court recognized the death penalty is qualitatively different from any other sentence, *id.*, and stressed the need for "individualized consideration of mitigating factors" in capital cases. *Id.* at 606, 98 S.Ct. at 2965.

A year later, in *Green v. Georgia*, 442 U.S. 95, 97, 99 S.Ct. 2150, 2151–52, 60 L.Ed.2d 738 (1979) (per curiam), the Court held that testimony, though hearsay under Georgia law, could not be excluded because it was "highly relevant to a critical issue in the punishment phase of the trial ... and substantial reasons existed to assume its reliability." Petitioner had attempted to introduce testimony to the effect that the witness had been told by the co-defendant that he (the co-defendant) had actually killed the victim. The "critical issue" during the penalty phase was whether petitioner had participated directly in the murder. Tying the decision to the unique facts of the case, the Court concluded that " 'the hearsay rule may not be applied mechanistically to defeat the ends of justice.' " *Id.*, (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973)).

More recently, in *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), the Court vacated a death sentence relying on the standard set forth in *Lockett.* Eddings, while sixteen years old, killed a police officer in Oklahoma. During the sentencing proceeding, in mitigation, he presented evidence of a turbulent family history, of beatings by his father, and of emotional disturbance. The trial judge refused, as a matter of law, to consider in mitigation Eddings' family background and emotional disturbance, and found that the only mitigating circumstance was petitioner's youth, which was outweighed by aggravating circumstances. The Court found Eddings' family background and mental and emotional development relevant mitigating factors that must be considered in sentencing. *Id.* at 116, 102 S.Ct. at 877–78. It stressed that a system of capital punishment must be "humane and sensible to the uniqueness of the individual," *id.* at 110, 102 S.Ct. at 874, and that the death sentence may not be imposed without individualized consideration of mitigating factors. The Court noted that "[j]ust as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating evidence." *Id.* at 113–14, 102 S.Ct. at 876–77 (emphasis in original).

The most recent pronouncement by the Court on the issue is *Skipper v. South Carolina*, —— U.S. ——, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986). Skipper was convicted in South Carolina of capital murder and rape, and sentenced to death. During the sentencing proceeding, Skipper sought to present testimony of two jailers and a regular visitor to the jail to demonstrate his good behavior during the seven months he was in jail awaiting trial. The trial court, however, precluded the witnesses from testifying, ruling such evidence would be irrelevant because " 'whether [petitioner] can adjust or not adjust' was 'not an issue in this case.' " *Id.*, 106 S.Ct. at 1670.

The State argued that the ruling was correct because the witnesses were not competent to give an opinion of Skipper's future adaptability to prison, that his ability to adjust to prison was irrelevant because it did not bear on his character, and the testimony would have been cumulative because Skipper and his former wife testified about his behavior in jail. The Court rejected these arguments. It observed that Skipper informed the trial court that he intended the witnesses to testify about his

past adjustment to prison, not render an opinion about future adaptability. Thus, the witnesses were competent to testify about what they had observed. It also concluded that "a defendant's disposition to make a well-behaved and peaceful adjustment to life in prison is itself an aspect of his character that is by its nature relevant to the sentencing determination." *Id.* at 1672. Its final conclusion was that the exclusion of the proffered testimony was not harmless because the testimony of the jailers, though cumulative, would tend to be given greater weight by the jury. The Court's holding was summarized as follows: "The exclusion by the state trial court of relevant mitigating evidence impeded the sentencing jury's ability to carry out its task of considering all relevant facets of the character and record of the individual offender." *Id.* at 1673.

In this case, Mrs. Dutton's testimony would have been relevant mitigating evidence and its exclusion impeded the jury's ability to consider relevant aspects of petitioner's character. Mrs. Dutton was present in the courtroom, was called by petitioner to testify, and it is apparent from the record that she would have testified about such mitigating factors as family background, medical history and education. Record vol. III at 49–68. The trial court could have reasonably inferred the general character of Mrs. Dutton's testimony from the context of the proceeding. Although everything Mrs. Dutton would have said might not have been relevant, and could have been excluded, the nature of the witness and the context of the proceeding would provide a sufficient basis to allow her to testify. It is clear from the testimony given by Mr. Dutton's trial counsel at the habeas corpus proceeding that he intended to call Mrs. Dutton for the purpose of eliciting testimony that would have been relevant to the issue of mitigation. Among other things, he stated Mrs. Dutton would have told the jury that her son was "imma-

ture," was a "slow learner," did not "think real well," was "not very smart," and was a "follower." Record vol. 3 at 133–36. Moreover, during his opening remarks, trial counsel generally informed the court what he intended to show through the testimony of his two witnesses. These remarks sufficiently alerted the trial judge to the nature and tenor of Mrs. Dutton's testimony and that such testimony was likely to be relevant mitigating evidence. Record vol. II at 481–82. Under *Skipper,* this type of evidence of petitioner's character may not be excluded from the sentencer's consideration.[8]

Oklahoma's rule of sequestration is a valid and important state rule. Nevertheless, a trial judge, faced with noncompliance with an order of sequestration, has a variety of methods of responding. 3 J. Weinstein and M. Berger, Weinstein's Evidence ¶ 615[03]. The Oklahoma courts have ruled that "it is within the discretion of the court to allow or exclude the testimony of such a witness." *Mayes v. State,* 560 P.2d 574, 577 (Okla.Crim.App.1976); *Edwards v. State,* 655 P.2d 1048, 1051–52 (Okla.Crim.App.1982). In the sentencing phase of a death penalty case, evidentiary rules "may not be applied mechanistically...." *Green v. Georgia,* 442 U.S. at 97, 99 S.Ct. at 2151. Assuming the exclusion order properly applied to the sentencing proceeding, the trial court had the discretion to select means other than the exclusion of Mrs. Dutton's testimony to enforce the sequestration order. For example, it could have allowed Mrs. Dutton to testify, and then instructed the jury that she was present during the guilt proceeding. That approach would have permitted the jury to assess the witness's credibility while, at the same time, allowed petitioner to present crucial mitigating evidence.

In *Cobb v. State,* 244 Ga. 344, 260 S.E.2d 60 (1979), the Georgia Supreme Court was confronted with this issue under very similar circumstances. The Georgia court

---

**8.** The exclusion of this type of evidence of petitioner's character cannot be considered harmless error because, as in *Skipper,* we cannot confidently conclude that it would have had no appreciable effect upon the jury's deliberations.

*Skipper,* 106 S.Ct. at 1673. Under the circumstances of this case, it appears reasonably likely that the exclusion of evidence bearing on petitioner's character may have affected the jury's decision to impose the death sentence. *Id.*

ruled that, although the defendant failed to make an offer of proof, the trial court erred in mechanically applying the sequestration order to exclude a mitigating witness during the sentencing phase of a death penalty trial. Other courts have come to the same conclusion. For example, the Florida Supreme Court, in *Wright v. State*, 473 So.2d 1277, 1280 (Fla.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 870, 88 L.Ed.2d 909 (1986), ruled that the trial judge erred in strictly enforcing a sequestration order in a death penalty case. The Alabama Supreme Court, in *Ex parte Faircloth*, 471 So.2d 493, 496 (Ala.1985), held that "an accused may not be deprived of a witness's testimony solely because a witness disobeyed a sequestration order when that deprivation would violate the accused's constitutional rights." And in *Allen v. State*, 277 Ark. 380, 641 S.W.2d 710, 712 (1982), the Arkansas court noted that a violation of a sequestration order concerns credibility, not competency, and held that the "rule" should not be applied to deny an accused his constitutional rights even in the absence of a proffer. The Fifth Circuit, in *Braswell v. Wainwright*, 463 F.2d 1148 (5th Cir.1972), also ruled that a breach of the rule of sequestration cannot be used to deny a criminal defendant his constitutional right to present witnesses in his favor.

We agree with the holdings in these cases. In light of the critical nature of mitigating evidence in a death penalty case, the fact that there were no objections to the testimony, and the trial court's discretion to permit the witness to testify, we conclude the state trial court erred by excluding relevant mitigating testimony.

### III.

There is no more painful or sobering task for a judge than to pass on a capital case.

9. 28 U.S.C. § 2243 empowers the court, in granting the writ, to "dispose of the matter as law and justice require." *Fay v. Noia*, 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963) (dictum).

10. Okla.Stat.Ann. tit. 21, § 701.13 (West Supp. 1987) appears to permit death penalty cases to be remanded for resentencing. We are aware that the Oklahoma courts have expressed reservations about the application of this statute to

Although we have been concerned throughout this discussion with the rights of petitioner, we are mindful of the death and suffering he has caused. While the record reflects that petitioner murdered in cold blood, we are obliged to follow certain established rules that govern the imposition of capital punishment. The Supreme Court has been exceedingly cautious to ensure that a person found guilty of a capital offense is given every opportunity to present potentially mitigating evidence that might form the basis for a sentence less than death. As a lower federal appellate court, we are bound by the Court's pronouncement that a sentencer may not be precluded from considering any relevant mitigating evidence. Thus, although petitioner's first degree murder conviction is valid, because the sentencing jury was prevented from considering the testimony of petitioner's mother during the sentencing proceeding, the death sentence imposed on petitioner must be adjudged invalid under the eighth and fourteenth amendments.

The judgment of the district court denying the petition for a writ of habeas corpus is reversed. The district court is directed to issue a writ of habeas corpus, modifying petitioner's sentence to life imprisonment[9] unless the State, within such reasonable time as the district court may fix, commences new sentencing proceedings to relitigate the issue of punishment.[10]

### REVERSED AND REMANDED.

BARRETT, Circuit Judge, concurring:

I fully concur in Judge Baldock's *en banc* opinion. I write separately to emphasize one point.

The fact that proffered mitigating testimony is relevant does not, standing alone,

cases pending on appeal at the time of its passage. *Green v. State*, 713 P.2d 1032, 1041 n. 4 (Okla.Crim.App.1985); *but see, Brewer v. State,* 718 P.2d 354, 365–66 n. 1 (Olka.Crim.App.), *cert. denied,* — U.S. ——, 107 S.Ct. 245, 93 L.Ed.2d 169 (1986). That matter is not now before us and we express no view on whether it would violate the United States Constitution to apply the statute retroactively.

render its exclusion reversible error. In *Skipper v. South Carolina,* —— U.S. ——, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), the reason that the trial court's exclusion of the proffered testimony of the two jailers was held to be reversible error was pinpointed in the majority opinion:

> Nor can we confidently conclude that credible evidence that petitioner was a good prisoner would have had no effect upon the jury's deliberations. The prosecutor himself, in closing argument, made much of the dangers petitioner would pose if sentenced to prison, and went so far as to assert that petitioner could be expected to rape other inmates. Under these circumstances, it appears reasonably likely that the exclusion of evidence bearing upon petitioner's behavior in jail (and hence, upon his likely future behavior in prison) may have affected the jury's decision to impose the death sentence. Thus, under any standard, the exclusion of the evidence was sufficiently prejudicial to constitute reversible error.

—— U.S. at ——, 106 S.Ct. at 1673.

In the instant case, the main factor in mitigation was the contention that Dutton was easily influenced by older men. In relation to the murder, Dutton's contention was that he was so much under the influence and control of one Carl Morgan that he (Dutton) shot and killed Gray because he had been commanded to do so by Morgan. Mrs. Dutton would have testified, among other things, that: her son was a slow learner; as a boy he was well behaved, but always scared, easily intimidated and always in fear of his peers; he was easily influenced by older men; and he had been committed to hospitals on several occasions for treatment of emotional problems, precipitated by drug abuse. This testimony would have been quite important in relation to the contention that Dutton acted out of fear and under the influence of Morgan.

Thus, while some of Mrs. Dutton's testimony concerning her son's character and background, though relevant, would not have risen to the level of prejudicial error if excluded, her testimony concerning her son's emotional problems and his history of having been easily influenced, led and intimidated by his peers was central to his mitigation defense. As such, its exclusion was not harmless error. *Skipper, supra; Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

JOHN P. MOORE, J., Circuit Judge, concurring:

I am in agreement with the results reached in this case and with the general analysis undertaken by the court, but because I believe the court has not fully emphasized the precise problem presented here, I feel obliged to write separately.

In this case, the record makes clear that but for the unsolicited application of a rule of sequestration, the sentencing jury would have heard critical mitigating evidence. Moreover, it is also clear that this rule was invoked needlessly and without consideration of the nature of the testimony that would have been presented. Under Oklahoma law, "it is within the discretion of the court to allow or exclude the testimony of ... a witness [whose testimony would otherwise violate a sequestration rule]." *Mayes v. State,* 560 P.2d 574, 577 (Okla. Crim.App.1976); *Edwards v. State,* 655 P.2d 1048, 1051–52 (Okla.Crim.App.1982). Nevertheless, the state trial court made no effort to exercise this discretion, despite the knowledge that Mrs. Dutton was a vital witness.

Defense counsel's opening remarks informed the court of what he intended to show through the testimony of his witnesses. These remarks alerted the judge to the nature of Mrs. Dutton's testimony, leaving no doubt that she would present relevant mitigating evidence. That conclusion is amplified by the testimony of Mr. Dutton's trial counsel at the habeas hearing in the district court. As in *Skipper,* exclusion of this evidence of petitioner's character improperly deprived him of his right to introduce relevant evidence bearing upon the sentencer's consideration.[1]

---

1. Given this jury deliberated over six hours with only the state's strong aggravating evidence and minimal defense evidence before them, this is no idle concern.

These circumstances compel the conclusion that the application of the Oklahoma rule on sequestration of witnesses to exclude the testimony of the only witness known to the court to be available to give mitigating evidence in his behalf deprived Mr. Dutton of a fair trial.[2] Even though the Oklahoma rule is valid and important, its application to this case worked a result which was beyond the underlying purpose of the rule itself. Since the state judge was imbued with discretion to allow Mrs. Dutton to testify, even if her testimony was in violation of the rule, application of the rule in this case was mechanistic and constitutionally unsupportable. *See Green v. Georgia,* 442 U.S. at 97, 99 S.Ct. at 2151–52. The action of the state trial judge here was no different in substance from the acts of the trial judge in *Skipper;* thus, we have no choice but to conclude the writ of habeas corpus must be granted.

Circuit Judge STEPHEN H. ANDERSON joins me in this concurrence.

---

**2.** To the extent the majority opinion can be read to imply that simply because Mrs. Dutton was the defendant's mother the trial judge should have assumed her testimony would have been relevant, I disagree. It is because the trial judge was *told* what the defense witnesses were going to say, not because of whom they were, that error was committed. With the knowledge of this testimony, the judge had sufficient information before him to exercise his discretion to allow Mrs. Dutton to testify. His failure to do so under these circumstances is constitutional error.